UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHOWTIME ENTERTAINMENT LLC,    )<br>    )<br>    Plaintiffs,    )<br>    )<br>    v.    )<br>    )<br>MIKE AMMENDOLIA, in his official    )<br>capacity, LAWNEY TINIO, in his official    )<br>capacity, and the TOWN OF MENDON,    )<br>    )<br>    Defendants.    )<br>    ) | Civil Action No.<br>10-40194-FDS |

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This action arises from an application by plaintiff Showtime Entertainment LLC to the Town of Mendon for an entertainment license to present live nude dancing. After denying Showtime's initial application, the town's Board of Selectmen granted its second application. The license that the Board granted is contingent on Showtime's compliance with the town's zoning by-laws, including one that requires that any adult entertainment establishment obtain a special permit from the town's Zoning Board of Appeals before it can commence business. Counts 1 and 2 of the complaint allege that the by-law's special permit scheme is an impermissible prior restraint in violation of the First and Fourteenth Amendments because it grants the Zoning Board unbridled discretion in deciding whether to grant the special permit.

The parties have filed cross-motions for summary judgment on this issue. The Court will grant relief in favor of Showtime as to both counts. That ruling, as explained below, is neither an endorsement of the proposed adult entertainment establishment, nor a condemnation of the

efforts of the town to regulate it. To the contrary, the Court is entirely sympathetic to the concerns of the people of Mendon, as reflected in the actions of their public officials, that such an establishment is likely to have a deleterious effect on the community in a variety of ways. Nonetheless, both this Court and the town itself are bound by long-standing principles of constitutional law that narrowly constrain the manner in which activities protected by the First Amendment may be regulated. Because the by-law at issue—at least in its current form—violates those principles, the Court has no choice but to grant relief to the plaintiff.

## I.   Background

On May 2, 2008, the Town of Mendon adopted a zoning by-law that established an adult entertainment overlay district consisting of four lots on Milford Street. (Compl. & Answer ¶ 6; Pl.'s Appx. at 1-4).[1] Section 5.01(b) of the by-law states the purpose of the ordinance:

> The purpose of this Adult Entertainment Overlay District section of the Town of Mendon Zoning Bylaws is to address and mitigate the secondary effects of adult entertainment establishments. Secondary effects impact the health, safety[,] and general welfare of the Town of Mendon and its inhabitants. These effects include increased crime, and adverse impacts on public health, the business climate, the property values of residential and commercial property[,] and the quality of life.
>
> The provisions of this section have neither the purpose nor intent of imposing a limitation on the content of any communicative matter or materials . . . . Similarly, it is not the purpose or intent of this Section . . . to restrict or deny access to adult entertainment establishments or to sexually oriented matter or materials that is protected by the Constitutions of the United States and the Commonwealth of Massachusetts . . . .

(Pl.'s Appx. at 1).

Section 5.01(f) of the by-law requires that anyone wishing to operate an adult

---

[1] This by-law was promulgated pursuant to Mass. Gen. Laws ch. 40A, § 9 and the Home Rule Amendment to the Massachusetts Constitution. (Pl.'s Appx. at 1). Mass. Gen. Laws ch. 40A, § 9 provides that "[z]oning ordinances or by-laws shall provide for specific types of uses which shall only be permitted in specified districts upon the issuance of a special permit."

entertainment establishment in the overlay district must obtain a special permit from the Mendon Board of Zoning Appeals:

> Adult entertainment enterprises may be allowed in the Overlay District only by Special Permit granted by the Board of Appeals.  No Special Permit may be granted by the Board of Appeals for an Adult Bookstore, Adult Video Store, Adult Paraphernalia Store, Adult Motion Picture Theater, or Adult Live Entertainment Establishment unless the following conditions and limitations are satisfied in addition to all other zoning conditions:
>
> (i) No Adult Entertainment Establishment shall be located less than 500 feet from a child care facility . . . , nor less than 300 feet from any residential building . . . .
>
> (ii) A minimum 50 foot vegetated buffer containing adequate screening shall be provided between an adult entertainment establishment and other abutters . . . .  Structures with the proposed use shall be located a minimum of 100 feet from any street line.
>
> (iii) No material depicting, describing[,] or relating to sexual conduct . . . shall be displayed in the windows of, or on the building of, any Adult Entertainment Establishment, or be visible to the public from the pedestrian sidewalks . . . .
>
> (iv) [Various sign limitations must be followed.]
>
> (v) No [obscene or indecent] merchandise or services . . . shall be disseminated or available therein.
>
> (vi) Appearance of buildings . . . shall be consistent with the appearance of buildings in similar (but not specifically "adult") use in Mendon . . . .  A six (6) foot high solid fence or a landscaped buffer of evergreen trees or shrubs six (6) feet high at the time of planting shall be provided and maintained along the side and rear property lines.
>
> (vii) No more than one structure to be used for adult entertainment shall be located on any one lot.
>
> (viii) No Adult Entertainment special permit shall be issued to any person convicted of violating [specified criminal statutes].

(Pl.'s Appx. at 2).

Finally, Section 5.01(g)(iii) of the by-law gives the Zoning Board of Appeals authority to attach certain types of conditions to special permits issued to adult entertainment establishments:

> In approving a Special Permit, the Special Permit granting authority may attach such conditions, limitations, and safeguards as are deemed necessary to protect the immediate area and the Town, provided however that no such conditions in fact prohibit the use of the property for the use intended. Conditions of approval may include but are not limited to requirements regarding [setbacks, parking facilities, building appearance, building size, methods and time of operation, and traffic control].

(Pl.'s Appx. at 25).

In addition to complying with the town's zoning by-laws, any bar or restaurant that seeks to present nude dancing in Mendon must also obtain an entertainment license from the local licensing authority under Mass. Gen. Laws ch. 140, § 183A.[2] The Mendon Board of Selectmen is the town's entertainment licensing authority. (Pl.'s Appx. at 22).[3] On June 2, 2008, the town adopted regulations pursuant to this authority that address licensing under the statute as applied to adult entertainment. (*Id.* at 18-42). Under these regulations, "[i]t is unlawful for any person to . . . operate an adult entertainment premises . . . within the Town of Mendon without a license from the Board of Selectmen to do so . . . ." (*Id.* at 25). Upon application for such a license, "[t]he Board of Selectmen . . . shall grant a license . . . unless they find that the license . . . would adversely affect the public health, safety[,] or order, in that [the dancing] cannot be conducted in a manner so as to [prevent crime, safety hazards, unreasonable noise, and unreasonable traffic

---

[2] Mass. Gen. Laws ch. 140, § 183A provides that "[n]o [establishment subject to the statute's licensing authority] shall, as a part of its usual business, offer to view, set up, set on foot, maintain or carry on a concert, dance exhibition, cabaret or public show of any description, unless and until a license therefor has been issued by the licensing authorities."

[3] *See* Mass. Gen. Laws ch. 140, § 1 (providing that a town's licensing authority is its board of selectmen).

4

impacts]." (*Id.* at 30).

At some point either before or soon after the town adopted its by-law and regulations related to adult entertainment, plaintiff Showtime Entertainment LLC acquired the lot at 49 Milford Street, a parcel that lies within the town's adult entertainment overlay district. (Compl. & Answer ¶ 2; Pl.'s Appx. at 1).[4] On August 4, 2008, it filed its first application for an adult entertainment license to allow it to present nude dancing at an establishment it planned to build at the site. (Compl. & Answer ¶ 13). The Board denied the application on October 1, 2008. (*Id.*).

Six days later, on October 7, 2008, the town held a special town meeting at which it adopted amendments to its zoning by-laws relating to adult entertainment establishments and to its liquor-licensing authority under Mass. Gen. Laws ch. 138, §§ 12 and 14. (Compl. Ex. C). The Massachusetts Attorney General reviewed the amendments and issued an opinion letter on the matter on January 20, 2009.[5] (*Id.*). The letter approved the amendments to the zoning by-law. (*Id.*). It disapproved one of the amendments to the liquor licensing by-law, but approved the others on the basis that their statutory and constitutional validity was at least "fairly debatable." (*Id.*).[6]

---

[4] It is not clear from the record when Showtime acquired the parcel at 49 Milford Street or whether the town adopted its new by-law and licensing regulations in response to Showtime's plans to open an establishment there.

[5] Mass. Gen. Laws ch. 40, § 32 provides that, "before a [municipal] by-law takes effect it shall be approved by the attorney general or ninety days shall have elapsed without action by the attorney general after the clerk of the town in which a by-law has been adopted has submitted to the attorney general a certified copy of such by-law with a request for its approval . . . ." The state attorney general reviews municipal regulations with deference and has only limited power of disapproval. *Amherst v. Attorney General*, 398 Mass. 793, 796 (1986).

[6] The amendments to the zoning by-law, which appear to have become Section 5.01(i) and which are not challenged in the counts at issue in this memorandum and order, provide:

> The following provisions apply to all Adult Entertainment Establishments located within the Town of Mendon:

Showtime submitted another application for an adult entertainment license to the Board

    (i)        No Adult Entertainment or Use facility shall exceed 2,000 square feet in footprint in keeping with the historically rural atmosphere of the town and in consideration of traffic safety.

    (ii)       No Adult Entertainment or Use facility shall not [sic] exceed 14' in structural height.  Basement areas shall not be accessed by patrons for any purpose and shall not be furnished for retail or entertainment purposes.

    (iii)      Any pre-existing Adult Entertainment o[r] Use facility exceeding 2,000 square feet must comply with clauses (i) and (ii) above, upon re-issuance of the annual adult entertainment license to operate . . . .

    (iv)      No Adult Entertainment or [U]se facility shall open for business prior to 4:30pm [on] days in which school is in session in order to provide an opportunity for all elementary school buses to finish student bus routes.

(Def. Appx. at 30-31).

The amendments to the liquor licensing by-laws, which also are not at issue at this stage of the litigation, provide:

    The following provisions apply to all Adult Entertainment or Use establishments . . . located within the layout lines of the Adult Entertainment Overlay District . . . :

    1.       The Town of Mendon shall not grant any license for the sale of alcohol [under Mass. Gen. Laws ch. 138, § 12] to any Adult Entertainment or Use establishment . . . as the presence of alcohol is documented to exacerbate negative secondary crime effects at sexually-oriented businesses.

    2.       The Town of Mendon shall not grant any special licenses for the sale of alcohol for consumption [under Mass. Gen. Laws ch. 138, § 14] to any [Adult Entertainment or Use establishment] as the presence of alcohol is documented to exacerbate negative secondary crime effects at sexually-oriented businesses.

    3.       The Town of Mendon shall not allow patrons of Adult Entertainment or Use establishments to consume alcoholic beverages within any Adult Entertainment or Use establishment, even if such beverages are brought to the premises by the patrons as the presence of alcohol is documented to exacerbate negative secondary crime effects at sexually oriented businesses.

    4.       In the event that an establishment already in possession of a license [under Mass. Gen. Laws ch. 138, §§ 12 or 14] applies for a license to operate an Adult Entertainment or Use establishment, such establishment shall only be granted a license to coincide with the expiration of its [ch. 138, §§ 12 or 14] license and this license will not be renewed.

    5.       No Adult Entertainment or Use establishment situated outside of the Adult Entertainment Overlay District may be located within seven hundred fifty (750) feet of a lot line of any parcel containing an establishment licensed under the provisions of [Mass. Gen. Laws ch. 138, §§ 12 or 14].

(Compl. Ex. B; Compl. Ex. C).  Because the fifth of these amendments was disapproved by the attorney general, it did not take effect.  (Compl. Ex. C).

of Selectmen on February 26, 2010. (Compl. & Answer ¶ 19). Like the first application, the renewed application sought a license to operate a restaurant or club that would feature live nude dancing at the 49 Milford Street property. (Pl.'s Appx. at 5). The application included a list of proposed license conditions, an architectural plan depicting the premises in their existing condition, a site plan with the proposed building, and a rendering and plan for the proposed building. (Pl.'s Appx. at 5).

The Board conducted a hearing concerning the application on April 5, 2010. (*Id.*). At the hearing, Showtime stated that it would not apply for a liquor license. (*Id.* at 7). It also presented a traffic study indicating that the proposed nightclub would not cause traffic problems in the area. (*Id.* at 6). An organization of Mendon residents, Speak Out Mendon, opposed the application and submitted evidence that increased criminal activity would be a likely secondary effect of an adult nightclub at the site. (*Id.*).[7]

The Board of Selectmen granted Showtime's application in a decision issued on May 3, 2010. (*Id.* at 8, 16). The Board, however, found that the proposed nightclub could increase the risk of crime in the town and that reasonable security measures would be necessary. (*Id.*). Accordingly, the Board attached conditions to the license that required Showtime to implement various parking, security, safety, and noise-reduction measures; prohibited the sale and consumption of alcohol on the premises; and limited operating hours to the period between 4:30 p.m. and 1:00 a.m. (*Id.* at 9-15). The Board also conditioned the license on Showtime's compliance with all by-laws of the town, including the special permit requirement for adult

---

[7] Other issues that were raised at the hearing include the adequacy of the water supply on the property, outstanding tax liens and judgments against the principals of Showtime, and an unresolved enforcement order concerning wetlands on the site of the proposed club. (Pl.'s Appx. at 7-8).

entertainment establishments within the overlay district.  (*Id.* at 1-4, 7).

After receiving its license, Showtime did not apply to the Zoning Board for a special permit to operate, but instead brought this action against the town.  Counts 1 and 2 of the complaint allege that the by-laws relating to the special permit requirement for adult entertainment establishments constitute an impermissible prior restraint on the freedom expression under the First and Fourteenth Amendments.  The parties have filed cross-motions for summary judgment on this issue.

## II.     Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se.  Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the party against whom summary judgment has entered." *Wightman v.*

*Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir. 1996) (internal citations omitted).

**III.    Analysis**

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." The Fourteenth Amendment extends this principle to laws passed by state and local governments. *See, e.g.*, *Brown v. Entm't Merch. Ass'n*, 131 S. Ct. 2729, 2742 (2011). As a general matter, freedom of speech "means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002). This protection covers entertainment as well as political speech and reflects the constitutional principle that "esthetic and moral judgments about art . . . are for the individual to make, not for the Government to decree, even with the mandate or approval of a majority." *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 818 (2000). The Supreme Court has expressly held that non-obscene "nude dancing . . . is expressive conduct within the outer perimeters of the First Amendment." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991).[8]

The level of scrutiny that a court must apply in reviewing a regulation that is alleged to restrain a protected form of expression is determined by whether the governmental interest in enacting that regulation is related to the content of the expression. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 278 (2000). A municipal ordinance that regulates the purveyance of sexually explicit material is reviewed as a content-neutral time, place, and manner restriction if, by its

---

[8] The Supreme Judicial Court likewise has held that nude dancing is a protected form of expression under Article 16 the Massachusetts Declaration of Rights, which provides that "[t]he right of free speech shall not be abridged." *Commonwealth v. Sees*, 374 Mass. 532, 536 (1978) (holding that Article 16 "draws no distinction between free speech in a bar and free speech on a stage" or between a dancer who is nude while "rendering a selection from the 'Ballet Africains'" and one who is "engaged in the customary 'barroom' type of nude dancing").

terms, it is intended to reduce the "undesirable secondary effects" that such businesses may have and if it neither bans erotic businesses altogether nor attempts to suppress adult entertainment because it is deemed "offensive." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49 (1986).[9] Here, Section 5.01(b) of the by-law clearly announces that the special permit requirement has such a purpose, so the ordinance is a content-neutral regulation. (Pl.'s Appx. at 1). As such, it must be upheld if it is "designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton*, 475 U.S. at 50; *see also City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 440-41 (2002) (plurality opinion) (reaffirming the framework of *Renton* as applied to adult entertainment ordinances).

A.   **Section 5.01(f)**

Section 5.01(f) of the by-law prohibits the operation of an adult-entertainment establishment until the operator obtains a special permit.[10] A licensing scheme that "[gives] public officials the power to deny use of a forum in advance of actual expression" is a prior restraint on First Amendment liberties. *Southeastern Promotions*, *Ltd. v. Conrad*, 420 U.S. 546, 558 (1975); *see also Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). While "[p]rior restraints are not unconstitutional per se . . . [a]ny system of prior restraint . . . bear[s] a heavy presumption against its constitutional validity." *Id.*, 420 U.S. at 558. To overcome this

---

[9] In *Renton*, the ordinance at issue was "designed to prevent crime, protect the city's retail trade, maintain property values, and generally protect and preserve the quality of the city's neighborhoods, commercial districts, and the quality of urban life." *Renton*, 475 U.S. at 48 (internal quotation marks omitted).

[10] In this way, the by-law is different from regulatory schemes that regulate the adult-entertainment industry through generic rules as to when, where, or in what manner erotic businesses may operate. Ordinances that address the secondary effects of nude dancing by creating general rules have been found valid under the *Renton* standard. *See, e.g.*, *Renton*, 475 U.S. at 54 (upholding distance requirements); *D.H.L. Associates, Inc. v. O'Gorman*, 199 F.3d 50, 56 (1st Cir. 1999) (upholding zone limitations); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1365 (11th Cir. 1999) (upholding size requirements); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 741 (1st Cir. 1995) (upholding limits on operating hours).

presumption, a governmental entity must prove that its ordinance contains "narrow, objective, and definite standards" to guide the licensing authority in deciding whether to issue a permit. *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 21 (1st Cir. 2002) (quoting *Forsyth Cnty. v. The Nationalist Movement*, 505 U.S. 123, 131 (1992)); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990) ("[A]n ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.") (internal quotation marks omitted); *Lady J. Lingerie*, 176 F.3d at 1361 ("An ordinance that gives public officials the power to decide whether to permit expressive activity must contain precise and objective criteria on which they must make their decisions; an ordinance that gives too much discretion to public officials is invalid.").

Plaintiff contends that the town cannot meet this burden because the by-laws vest unbridled discretion in the Zoning Board as to whether to grant or deny an application for a special permit under Section 5.01(f).[11]  The thrust of plaintiff's argument is that the by-law does not define what conditions are sufficient for a special permit to be granted.  Section 5.01(f) uses mandatory language only with respect to when the Board must deny a permit, providing that "[n]o Special Permit may be granted . . . unless [certain specified] conditions and limitations are satisfied . . . ."  By contrast, Section 5.01(f) provides that a permit "*may* be allowed . . . by Special Permit granted by the Board" (emphasis added).  Plaintiff contends that the use of the

---

[11] Although facial challenges are generally disfavored, they have been permitted in the First Amendment context where, as here, a plaintiff contends that a licensing scheme vests unbridled discretion in the decisionmaker. *FW/PBS*, 493 U.S. at 223.

word "may" allows the Zoning Board to deny a permit application based on undefined criteria even if all of the enumerated prerequisites for a permit are met.

Plaintiff is correct that the ordinary meaning of the word "may" is permissive in nature and that Section 5.01(f) does not elsewhere specify when a permit must, or even should, be granted. Thus, the bare text of the by-law provides no definite standard for when the Zoning Board *should* grant a special permit—it only defines when it *must not*.

In *Venuti v. Riordan*, 521 F. Supp. 1027 (D. Mass. 1981), the court invalidated an earlier version of the Massachusetts entertainment licensing statute, Mass. Gen. Laws ch. 140, § 183A, for substantially the same infirmity that plaintiff identifies in the by-law. In *Venuti*, the plaintiff, a corporation that sought to present "nude contemporary American dance entertainment" in a casino, brought a facial challenge to the state licensing law. At that time, the statute prohibited live entertainment at an eating or drinking establishment "unless and until a license . . . has been issued by the licensing authorities, who *may* upon written application . . . grant such a license." *Id.* (emphasis added). The amended statute was upheld in *Amesbury Entm't LLC v. Croteau*, 77 F. Supp. 2d 174, 178 (D. Mass. 1999). The court held that the licensing law violated the First Amendment because "on its face [it] delegates complete discretion to licensing authorities and contains no standards whatsoever." *Id.* at 1031. The statute was subsequently re-enacted in its current form. Mass. St. 1981, ch. 694, § 1. It now provides that "licensing authorities *shall* grant a license . . . unless they find that the license . . . would adversely affect the public health, safety or order, in that [the live entertainment] cannot be conducted in a manner so as to [prevent crime, safety hazards, unreasonable noise, and unreasonable traffic impacts]." Mass. Gen. Laws ch. 140, § 183A (emphasis added). The town has the same obligation as the Commonwealth to

cabin the discretion of licensing officials whom it entrusts with authority to restrain exercises of protected forms of expression; like the state, it must therefore adopt ordinances that clearly define the conditions on which such expression will be permitted.[12]

The town contends that its by-law is distinguishable from the statute that was invalidated in *Venuti* under the reasoning of the court in *Owens v. Board of Appeals*, 11 Mass. App. Ct. 994 (1981). In that case, the court announced a principle that "any provision of a municipal zoning by-law which is challenged as defective must not be viewed in isolation. Rather, the provision must be construed in the context of the by-law as a whole and it must be given a sensible and practical meaning within that context." *Id.* at 995. Here, the town asserts that the framework of the by-law compels a construction of Section 5.01(f) that *requires* the Zoning Board to grant a special permit if the conditions under which a permit may not be granted are absent. It relies on Section 5.01(b)'s assurances that the purpose of the special permit requirement is to mitigate secondary effects of adult entertainment and that the by-law is not intended (1) to "impos[e] a content-based restriction on communicative matter" or (2) "to restrict or deny access to adult entertainment . . . that is protected by the [federal and state] constitutions." These statements, however, simply recite constitutional standards that the by-law must meet to be valid; they do not provide contextual indications of what the operative text of the by-law means. *See Nationalist Movement v. City of Boston*, 12 F. Supp. 2d 182, 194 (D. Mass. 1998) ("It is no

---

[12] In fact, in cases in which courts have upheld licensing schemes that regulated erotic entertainment establishments, the ordinances at issue have generally used mandatory language similar to that found in the current version of Mass. Gen. Laws ch. 140, § 183A. *See Fantasy Book Shop, Inc. v. Boston*, 652 F.2d 1115 (1st Cir. 1981) (upholding an ordinance that provided that "the mayor or selectmen shall grant such license or shall deny such license upon a finding that [enumerated conditions are met]."); *see also FW/PBS*, 493 U.S. at 227 (invalidating an ordinance notwithstanding a provision that "[t]he chief of police shall approve the issuance of a license [unless enumerated conditions apply]").

answer for the City to say that the regulation contains the proper constitutional phrases . . . . A regulation is always subject to [those] limitation[s].").

The town nevertheless insists that its reading of Section 5.01(f) is compelled by *Young's Court, Inc. v. Outdoor Adver. Bd.*, 4 Mass. App. Ct. 130 (1976). In that case, a Massachusetts court held that a provision in a local licensing ordinance that the licensing authority "may grant permits for the erection of billboards . . . only in areas determined to be of a business character" required the licensing authority to grant a license for a sign in an area zoned as "unrestricted." *Id.* at 132. The court arrived at this mandatory interpretation after considering a prefatory statement in the ordinance that indicated that "'outdoor [advertising] *is a permitted use* in areas zoned for any business . . . and in areas not so zoned but of a business character.'" *Id.* at 133 (quoting regulation) (emphasis added). Because it was undisputed that an "unrestricted" zoning designation permitted business activities in the area, the court found that the area was "of a business character" within the meaning of the policy statement. And because the policy statement indicated that outdoor advertising *was* a permitted use in areas "of a business character," the court found that the licensing authority unlawfully denied the permit. The court explained that "[a]lthough 'may' is ordinarily construed to be permissive," the particular regulation at issue revealed an "intent of the draftsmen" that the word would operate as an equivalent to "'shall' or 'must,'" under the particular facts of that case. *Id.* at 134.

This case is distinguishable from *Young's Court*. Unlike the statement of policy relied on in that case, Section 5.01(b) contains no affirmative statement as to what circumstances are sufficient for an establishment that features nude dancing to be permitted under the by-law. It states only that the by-law aims to address and mitigate the effects of such enterprises. This

purpose does not provide any meaningful guidance as to what permitting decision is required under any objectively determinable conditions. Nor does Section 5.01(b) incorporate by reference the enumerated conditions under which Section 5.01(f) prohibits the Board from issuing a permit in any way that might cast light on the outer bounds of the Board's licensing discretion.[13] Nor does it suggest that those conditions—narrow requirements that do not cabin, guide, or even address when the Board must grant a permit—are the exclusive circumstances under which a permit may be denied. Because Section 5.01(b) and Section 5.01(f) define no circumstances under which adult entertainment is permissible, neither can provide reason to interpret "may," as it is used in relation to the Board's licensing authority, to mean "must."

In sum, because it fails to provide narrow and objective standards, the town's special permit by-law vests excessive discretion in the Zoning Board. *See Fantasy Book Shop, Inc. v. Boston*, 652 F.2d 1115, 1122 (1st Cir. 1981); *cf. Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323-24 (2002) (holding that ordinance requiring a special permit for large events held in city parks did not grant the licensing authority excessively broad discretion because it specified that the park district "may deny a permit *only* for one or more . . . reasons set forth in the ordinance" (emphasis added)). For that reason, it cannot withstand constitutional scrutiny.

B. <u>Section 5.01(g)(iii)</u>

Plaintiff also attacks the by-law on the independent ground that Section 5.01(g)(iii) does

---

[13] The parties agree that the permit prerequisites enumerated in Section 5.01(f) and the potential permit conditions listed in Section 5.01(g)(iii) are themselves sufficiently objective and definite to survive constitutional scrutiny. The Court agrees. *See, e.g.*, *H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 623 (6th Cir. 2009); *Fantasy Book Shop, Inc. v. Boston*, 652 F.2d 1115 (1st Cir. 1981); *Casanova Entm't Group, Inc. v. City of New Rochelle*, 375 F. Supp. 2d 321, 336-37 (S.D.N.Y. 2005). However, because those conditions define only when the Board must *not* issue a permit, their validity does not determine whether the ordinance cabins the Board's permitting discretion once those prerequisites are met.

not provide an exclusive list of what permit conditions the Zoning Board may attach to an adult entertainment permit that it does grant. This argument appears to lack merit. *See, e.g.*, *Steakhouse, Inc. v. City of Raleigh, N.C.*, 166 F.3d 634, 639 (4th Cir. 1999) (upholding ordinance that included an open-ended list of allowable permit conditions).[14] However, because the Court finds that the by-law is invalid on the basis of the unbridled discretion it gives the Zoning Board in deciding whether to issue a permit at all, it is not necessary to decide that issue at this time.

### C. Severability

Section 5.01(j) of the by-law provides that "[i]f any section or portion of this bylaw is ruled invalid, such ruling shall not affect the validity of the remainder of the bylaw, which provisions shall remain in full force and effect." (Def.'s Appx. at 31). When a portion of a law or regulation is found to be invalid, "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). The inclusion of a severability clause creates a presumption of severability, but does not end the inquiry. *Id.*, at 685-86.

---

[14] The court, in *Steakhouse*, explained:

> Steakhouse maintains that section [the licensing ordinance] provides the [licensing board] with unfettered discretion because it leaves open the list of conditions the [board] may attach to its grant of a permit. However, the enumeration of thirteen specific conditions leaves the ordinance less open-ended than Steakhouse would have us believe. Moreover, the thirteen conditions do not relate in any way to expressive speech. Rather, they address the well-known variables inherent in any development (e.g., appearance of the proposed building, dedication of street and utility rights of way to the public, drainage systems, signage, etc.) that local governments have long been permitted to consider as a matter of their traditional land-use authority.

166 F.3d at 639. The same considerations would apply in this case.

Although the portion of the by-law that is invalid is a single sentence—"[a]dult entertainment enterprises may be allowed in the Overlay District only by Special Permit granted by the Board of Appeals"—it is crucial to the operation of Section 5.01's special permit requirement as a whole.  No part of the licensing scheme contemplated under Sections 5.01(f), (g), or (h) make sense without a provision granting authority to a body to issue the special permits.  Those sections are accordingly non-severable and invalid.[15]

## IV.     Conclusion

For the foregoing reasons, plaintiff's first motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: March 22, 2012

---

[15] The Court notes that the town's interest in mitigating secondary effects of nude dancing will not be entirely unprotected as a result of this ruling.  Section 5.01(i) contains size and operational requirements that "apply to all Adult Entertainment Establishments located within the Town of Mendon." (Def.'s Appx. at 31).  That provision is not challenged and will remain in force.  So will the town's entertainment licensing regulations and liquor-license by-laws that relate to adult entertainment establishments.