UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

```
_____
                               )
SHOWTIME ENTERTAINMENT LLC,     )     NO. 12-2121
                               )
     Plaintiff-Appellant,       )
                               )     PLAINTIFF-APPELLANT
v.                             )     SHOWTIME'S MOTION
                               )     FOR ATTORNEYS FEES AND COSTS
TOWN OF MENDON, ET AL.          )
                               )
     Defendants-Appellees       )
_____)
```

Now comes the plaintiff-appellant, Showtime Entertainment LLC, ("Showtime"), and moves this Honorable Court, pursuant to First Circuit Court of Appeals Local Rule 39.1(b) and 42 U.S.C. § 1988, to award Showtime reasonable attorney fees and costs incurred in litigating counts III through VI of the plaintiff's complaint.

The supporting documentation for this petition is set forth in the plaintiff's accompanying memorandum, and affidavits, which are incorporated herein.

As the prevailing party in the Court's grant of summary judgment on Counts III through VI, the plaintiff requests that the petition be granted.

Respectfully submitted,
The plaintiff,
Showtime Entertainment LLC
By its attorneys,

Dated: February 4, 2015          /s/ *Thomas Lesser*
                                 _____
                                 Thomas Lesser, BBO No. 295000

lesser@lnn-law.com
Michael Aleo, BBO No. 672071
aleo@lnn-law.com
Lesser, Newman & Nasser, LLP
39 Main Street
Northampton, MA 01060
(413)584-7331


CERTIFICATE OF SERVICE

I, Thomas Lesser, hereby certify that on February 4, 2015, the foregoing document was filed electronically and will be served electronically on defendants' counsel of record: registered ECF participant Robert S. Mangiaratti, Esq., Murphy, Hesse, Toomey & Lehane, LLP, Crown Colony Plaza, 300 Crown Plaza Drive, Suite 410, P.O. Box 9126, Quincy MA 02169-9126 rmangiaratti@mhtl.com.


/s/ Thomas Lesser

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

```
_____
                                    )
SHOWTIME ENTERTAINMENT LLC,         )     NO. 12-2121
                                    )
     Plaintiff-Appellant,           )
                                    )     MEMORANDUM IN SUPPORT OF
v.                                  )     PLAINTIFF-APPELLANT
                                    )     SHOWTIME'S MOTION FOR
TOWN OF MENDON, ET AL.              )     ATTORNEYS FEES AND COSTS
                                    )
     Defendants-Appellees           )
_____ )
```

The plaintiff-appellant, Showtime Entertainment LLC, ("Showtime"), has filed a motion requesting an award of attorney fees and costs, incurred in litigating <u>Showtime Entm't, LLC v. Town of Mendon</u>, 769 F.3d 61 (1st Cir. 2014). Showtime's request is brought, as the prevailing party, pursuant to the First Circuit Court of Appeals Local Rule 39.1(b) and 42 U.S.C. § 1988.[1]

I.   <u>PROCEEDINGS TO DATE</u>

Showtime brought an action in 2010 against the defendant, Town of Mendon ("Mendon"), and its representatives, challenging the constitutionality of a number of municipal bylaws directed exclusively at adult entertainment establishments, which restricted First Amendment protected speech.

---

[1] Under Local Rule 39.1(b), this Court can decide the issue of attorney fees or remand the determination of attorney fees to the District Court. Showtime suggests that, given the procedural history of the case, this Court is in a better position to decide the attorney fees issue than the District Court. There was no trial before the District Court, no pre-trial disputes were heard by the District Court, and the District Court did not hold a hearing on the parties' cross-summary judgment motions. Instead, the District Court granted Mendon summary judgment on the papers,

1

Showtime's first motion for partial summary judgment alleged
that Mendon's special permit adult entertainment bylaw violated
the First and Fourteenth Amendments to the United States
Constitution.   On March 22, 2012, the District Court granted
Showtime's first partial summary judgment motion.   It found that
the special permit bylaw posed an unconstitutional prior
constraint on the plaintiff's First Amendment liberties because
the bylaw failed to "provide narrow and objective standards" and
"vests excessive discretion in the Zoning Board."   Showtime
petitioned the District Court for attorney fees, which the
District Court granted.

On December 6, 2011, Showtime filed a second and third motion
for partial summary judgment on counts III through VI of its
complaint.   The second motion for partial summary judgment
challenged Mendon's bylaws restricting the size and height of
adult entertainment establishments, and the third motion for
partial summary judgment challenged Mendon's bylaws restricting
the hours of operation of adult entertainment establishments.   On
February 14, 2012, Mendon filed cross-motions for summary judgment
on each of those motions.

On August 9, 2012, the District Court, without a hearing,
granted Mendon summary judgment on counts III through VI of
Showtime's complaint.   Showtime Entm't LLC v. Ammendolia, 885 F.
Supp. 2d 507 (D. Mass. 2012) rev'd in part, question certified sub

---

which was then reversed by this Court.

nom. <u>Showtime Entm't, LLC v. Town of Mendon</u>, 769 F.3d 61 (1st Cir. 2014).

On October 8, 2014, this Court reversed the District Court decision and awarded Showtime summary judgment on counts III through VI.    <u>Showtime Entm't, LLC</u>, 769 F.3d at 66.    The Court found that Mendon improperly abridged Showtime's expressive activity, which was protected under both the First Amendment and the Massachusetts's Constitution.    The Court's decision fully resolved all issues pertaining to Counts III-VI.

Accordingly, as the prevailing party in a final judgment, Showtime requests an award, under 42 U.S.C. § 1988, of attorney fees and costs incurred in litigating Counts III through VI.

II.    <u>THE COURT SHOULD AWARD SHOWTIME ITS ATTORNEY FEES AND COSTS PURSUANT TO 42 U.S.C § 1988</u>

Pursuant to 42 U.S.C. § 1988, a prevailing party in a 42 U.S.C. § 1983 action is ordinarily entitled to an award of reasonable attorney fees and costs, absent special circumstances rendering such an award unjust.    <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983).    See 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title...the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.").    As this Court has stated, "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights

plaintiffs are virtually obligatory." <u>Gay Officers Action League v. Puerto Rico</u>, 247 F.3d 288, 293 (1st Cir. 2001) (citing <u>Stanton v. S. Berkshire Reg'l Sch. Dist.</u>, 197 F.3d 574, 576 (1st Cir. 1999)).  See also <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 89 n.1 (1989); <u>Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos</u>, 38 F.3d 615, 618 (1st Cir. 1994).  In this case, there are no special circumstances which would render an award unjust.

The United States Supreme Court has interpreted the term "prevailing party" in the context of 42 U.S.C. § 1988 to mean one who has been awarded some relief by a court that materially alters the legal relationship of the parties.  <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health & Human Resources</u>, 532 U.S. 598 (2001); <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792-93 (1989).  In this case, Showtime is clearly a prevailing party; it prevailed in full on all counts decided by this Court.

III. <u>THE REASONABLE HOURLY RATE SHOULD BE THE REASONABLE HOURLY RATE OF LAWYERS WITH SIMILAR SKILLS IN ADULT ENTERTAINMENT LITIGATION</u>.

In determining the amount that a prevailing party is owed, the Court begins by employing "the lodestar method," which, in general, requires "ascertainment of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" <u>Coutin v. Young & Rubicam P.R.</u>, 124 F.3d 331, 337 (1st Cir. 1997) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433

(1983)).   See <u>Perdue v. Kenny A. ex rel. Winn</u>, 130 S.Ct. 1662 (2010); <u>Gay Officers Action League</u>, 247 F.3d at 295.

The "rule of thumb" is "that the rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value." <u>United States v. One Star Class Sloop Sailboat</u>, 546 F3d 28, 40 (1st Cir. 2008).

Although the attorneys' normal western Massachusetts billing rates are an appropriate starting point in this case, they should not be the final resting place in determining the lodestar because (a) the relevant legal community in the adult entertainment field is a state-wide, rather than a western Massachusetts community, and (b) the factors set forth in <u>Johnson v Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), militate in favor of such a result.

In support of its requested fees, Showtime has presented affidavits from attorneys Steven Schwartz, Kenneth Tatarian and John Pucci as to the market rate for attorneys both in western Massachusetts and in the state-wide adult entertainment field. Showtime has also provided this Court with affidavits from lead counsel Thomas Lesser, as well as his associates, Lisa Kent and Michael Aleo, outlining the hours they spent in litigating the matter.

A.   <u>Reasonable Western Massachusetts Hourly Rates</u>

<u>Thomas Lesser</u>

5

Mr. Lesser charges his clients $350 an hour.  As the affidavit of John Pucci states, this is at the lower end of attorneys with similar experience in western Massachusetts.

Michael Aleo

Mr. Aleo, Mr. Lesser's current associate, joined Lesser, Newman and Nasser in September 2011.  Prior to joining Lesser, Newman and Nasser, Mr. Aleo acted as lead counsel on a wide variety of civil rights cases at the Lawyers' Committee for Civil Rights in Boston, Massachusetts.  Mr. Aleo's usual hourly rate from 2011 through 2012 was $200 per hour, in January 2013 it became $225 per hour, and in January 2014 it became $250 per hour.  Attorney Pucci's affidavit states that a fair hourly rate for a junior associate in complex civil litigation is a minimum of $200 an hour and $250 an hour for a more experienced associate.  Mr. Aleo was an experienced associate throughout this litigation.

Lisa Kent

Ms. Kent was Mr. Lesser's former associate.  Ms. Kent began practicing law in 1992 and had considerable experience as a litigator at the time she rendered services in this case.  Ms. Kent's usual hourly rate was $200 per hour.

B.    Reasonable Hourly Rates for Attorneys with Similar Skills, Experience and Reputation in Civil Rights and Adult Entertainment Litigation.

The rates that Showtime's law firm normally charges are well "in line with those prevailing in the [western Massachusetts] community for similar services by lawyers of reasonably comparable

skill." <u>Sys. Mgmt.</u>, 154 F. Supp. 2d at 203 (quoting <u>Blum v.</u>
<u>Stenson</u>, 465 U.S. 886, 895 n. 11 (1984)).[2]  But those rates are
lower than the prevailing rates in the adult entertainment field
or in the civil rights field, which are state-wide bars.  As the
affidavits of Attorneys Schwartz, Tatarian and Pucci clearly
state, the hourly rates for attorneys who litigate in those areas
are higher than typical western Massachusetts rates.

Steve Schwartz, an experienced civil rights litigator, swore
in his affidavit that,

> (1) he "know[s] Mr. Lesser to be one of the two or
> three leading civil rights attorneys in western
> Massachusetts, and one of the leading constitutional
> litigators throughout the Commonwealth.  He has
> achieved remarkable success for his clients in complex
> civil rights litigation and is widely sought after by
> clients seeking to assert protected constitutional
> rights.  He is an exceptional litigator, one willing to
> accept unpopular cases and represent often unpopular
> clients in order to ensure that their rights our
> vigorously protected and that our Constitution is
> vigorously defended."

> (2) Thomas Lesser "has a highly successful,
> statewide civil rights practice that is not limited to
> western Massachusetts where his office is located, but
> instead includes clients and cases throughout the
> Commonwealth."

> (3) "The First Amendment issues litigated here are
> in no way local, or limited to specific towns in
> western Massachusetts.  More importantly, the few
> attorneys who undertake these cases and specialize in
> these constitutional issues are drawn from across the
> Commonwealth.  Thus, private clients paying these
> counsel their standard hourly rates are required to pay

---

[2] See <u>Blum</u>, 465 U.S. at 895 n.11 (data evidencing the prevailing
market rate for counsel of comparable skill and experience
provides helpful guidance).

hourly rates that are determined by a statewide market and are not driven by western Massachusetts rates. Finally, the impact of litigation that vindicates constitutional rights is deemed of regional and national import, and is not localized to a particular county where the attorney's office is located or where the courthouse is situated."

(4) "Mr. Lesser, with forty years of experience doing controversial civil rights and complex constitutional litigation, as well as a reputation as a skillful litigator with a statewide civil rights practice, is at the very high end of relevant market rates."

(5) "His requested rate of $400/hour is more than reasonable. Moreover, it is considerably below the statewide rate, as reflected in the Greater Boston market, for similar work by similarly experienced attorneys. Finally, it is more than 25% lower than I have been awarded by judges sitting in the district court of western Massachusetts for similarly complex civil rights litigation."

Similarly, Ken Tatarian, an experienced adult entertainment litigator, states in his affidavit that, (a) Mr. Tatarian is familiar with rates charged by attorneys in the adult entertainment field; (b) Thomas Lesser is one of three attorneys in Massachusetts with an active practice in litigating adult entertainment cases; and (c) one of the three attorneys practicing in the adult entertainment field was charging $400 an hour in 1996.

Finally, John Pucci states in his affidavit that "[t]he fair hourly rate for adult entertainment cases appropriately should be considered on a state-wide basis, which would be higher than the rates in western Massachusetts, given the small number of attorneys who do such work."

8

The appropriateness of this Court awarding a lodestar of $400 an hour to Mr. Lesser, rather than $350 an hour, and $250 an hour to Mr. Aleo and Ms. Kent, is supported by attorney fee awards granted to attorneys with similar experience.  For example, in Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011), this Court awarded a rate of $425 to counsel in a case brought under Americans with Disabilities Act that was resolved through a court-approved settlement.  Such rates are consistent with decisions from the District Court.  See, e.g., Stokes v. Saga Int'l Holidays, Ltd., 376 F.Supp.2d 86 (D. Mass. 2005) (awarding "$445/hour for lead attorney, $395/hour for second attorney."); Rosie D. v. Patrick, 593 F. Supp. 2d 325, 329 (D. Mass. 2009) (where the court awarded the prevailing party attorney fees ranging from $425 per hour for the lead attorney with Thomas Lesser's experience to $245 per hour for the least experienced attorneys); Drumgod v. Callahan, No. 4-11193 (D. Mass. August 18, 2011) (approving hourly rates of $500 per hour for senior attorneys and stating, "The rates requested are consistent with both the rates of trial lawyers in the greater Boston area who have comparable experience and expertise . . . and the fees awarded in other recent cases.").  Massachusetts courts have approved similar rates.  See Anderson v. Am. Int'l, Grp., Inc., 2014 WL 3538679, at *5 (Mass. Super. June 11, 2014) (approving a fee of $450 for senior counsel).

9

C.     <u>If the lodestar is found to be $350 an hour, it should be adjusted up to $400 an hour in accordance with the factors set forth in <i>Johnson.</i></u>

Once it calculates a lodestar, the Court has discretion to adjust the lodestar, based on the twelve factors set forth in <u>Johnson v Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974). These factors, which have been embraced by this Court,[3] are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases.

In this case, eight of these factors favor an upward adjustment and four factors are neutral. None of the twelve factors favor a downward adjustment.

First, the questions decided by this Court were both novel and difficult. Both parties agreed that the bylaws in question

---

[3] <u>Coutin v. Young & Rubicam Puerto Rico, Inc.</u>, 124 F.3d 331 (1st Cir. 1997) ("[T]he lodestar method is a tool, not a straightjacket.").

raised constitutional issues of first impression. There was no case law directly on point with regard to the constitutionality of any of the bylaws in question.[4]

Second, there was a high degree of skill needed to litigate the issues properly. The issues before the Court were complicated constitutional issues regarding bylaws, which restricted adult entertainment, but did not ban it. They were not the type of issues that a typical, even experienced, civil litigator would have had the expertise to effectively pursue.

Third, the "result" could not have been better. The term "result" is measured by (a) a plaintiff's success in the litigation, which was complete here, and (b) the "societal importance of the right which has been vindicated." Coutin, supra at 338. Here, First Amendment protected rights were at stake. These rights have been properly termed "priceless" rights. Fifth Avenue Peace Parade Comm. V. Hoover, 327 F. Supp. 238 (S.D.N.Y. 1971).

---

[4] The novel and difficult nature of the matters before this Court stand in stark contrast to the issues Showtime raised in Counts I & II. The issues Showtime raised in Counts I & II were straight forward issues with abundant case law supporting Showtime's claims. Since they were issues any experienced civil attorney could have litigated, after Showtime's first summary judgment motion was granted, counsel requested that the District Court award fees to Thomas Lesser in the amount of $350 per hour, his usual hourly rate. Here, however, the issues raised in Counts III through VI were not straightforward, as evidenced by the fact that the District Court granted summary judgment to Mendon. That, in addition to the other seven factors discussed below, is why an hourly rate of $400 an hour, not $350 an hour, has been requested for attorney Lesser.

Fourth, as the affidavits from Attorneys Schwartz, Tatarian and Pucci establish, Showtime's counsel has exceptional experience, skills and reputation in the field of civil rights litigation, and more particularly, adult entertainment. He is one of a small number of attorneys in Massachusetts who regularly practices in the adult entertainment litigation field. By way of example, Mr. Lesser was lead counsel in <u>D.H.L. Assocs. v. O'Gorman</u>, 199 F.3d 50 (1st Cir. 1999), and <u>Mendoza v. Licensing Bd.</u>, 444 Mass. 188 (2005), the two most recent leading Massachusetts adult entertainment cases, both of which were cited by the defendants in their pleadings.

Fifth, adult entertainment cases are definitely "undesirable" cases for an attorney to undertake. Barroom nude dancing is not popular. The dislike for such activity transcends political boundaries. Both individuals with conservative political bents and individuals with progressive political bents are vocal in their opposition to such activity.

Sixth, the case required a large amount of time, time which had to be expended within relatively narrow time restraints, and necessarily precluded other work.

Seventh, as set forth above, the fees awarded in other complex civil rights actions in Massachusetts have often exceeded $400 an hour for counsel with comparable skills, reputation and experience to attorney Lesser and $250 an hour for experienced associates like Mr. Aleo and Ms. Kent.

12

Eighth, counsel had no prior relationship with Showtime prior to this litigation. Showtime, a business in central Massachusetts, sought out Lesser, Newman & Nasser in western Massachusetts, based on its reputation in the field of adult entertainment.

For these reasons, and in order to "pay homage to the fundamental reason that Congress passed the Fees Act - its resolve that certain types of wrongs...should not be countenanced and that private suits aimed at redeeming such abuses should be encouraged" - Showtime requests this Court award $400 an hour to Thomas Lesser, and $250 an hour to Michael Aleo and Lisa Kent. See City of Riverside v. Rivera, 477 U.S. 561, 574-75 (1986) (plurality opinion).

IV.  COSTS

As set forth in the affidavit of Thomas Lesser, Showtime has incurred certain costs in litigating this matter, including filing fees, professional copying and binding services, and in-house copying. The total costs to which Showtime is entitled to be reimbursed is $1,303.27.

V.  TOTAL FEES SOUGHT

Based on Showtime's request for fees of $400 an hour for Thomas Lesser and $250 an hour for Michael Aleo and Lisa Kent, the total fees sought are $181,080.00.

                              Respectfully submitted,
                              The plaintiff,
                              Showtime Entertainment LLC

13

By its attorneys,

Dated: February 4, 2015          /s/ Thomas Lesser
                          _____
                          Thomas Lesser, BBO No. 295000
                          lesser@lnn-law.com

                          Michael Aleo, BBO No. 672071
                          aleo@lnn-law.com
                          Lesser, Newman & Nasser, LLP
                          39 Main Street
                          Northampton, MA 01060
                          (413)584-7331


### CERTIFICATE OF SERVICE

I, Thomas Lesser, hereby certify that on February 4, 2015, the foregoing document was filed electronically and will be served electronically on defendants' counsel of record:  registered ECF participant Robert S. Mangiaratti, Esq., Murphy, Hesse, Toomey & Lehane, LLP, Crown Colony Plaza, 300 Crown Plaza Drive, Suite 410, P.O. Box 9126, Quincy MA 02169-9126 rmangiaratti@mhtl.com.


_/s/ Thomas Lesser __

14

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

```
_____
                              )
SHOWTIME ENTERTAINMENT LLC,    )      NO. 12-2121
                              )
      Plaintiff-Appellant,     )
                              )      AFFIDAVIT OF THOMAS LESSER
v.                            )      IN SUPPORT OF
                              )      PLAINTIFF-APPELLANT
TOWN OF MENDON, ET AL.         )      SHOWTIME'S MOTION FOR FEES
                              )      AND COSTS
      Defendants-Appellees     )
_____)
```

I, Thomas Lesser, swear under the pains and penalties of perjury that the facts set forth in Showtime Entertainment LLC's motion for attorney fees and costs, the memorandum in support of that motion, as well as in this affidavit, are accurate to the best of my knowledge.

1.   I am the lead attorney for the plaintiff Showtime Entertainment LLC ("Showtime") in the above-entitled matter.

2.   I was assisted in this litigation by Lisa Kent, when she was an associate of mine, as well as by Michael Aleo, my current associate.

3.   The hours that the three of us spent litigating counts III through VI of the complaint are set forth below. The hours are based on contemporaneous time records detailing the scope of the work done.

4.   The hours set forth below do not include hours spent litigating Counts I and II, which are not on appeal, or Count VII,

1

which has been certified to the Massachusetts Supreme Judicial Court for further guidance.

5.    My background is as follows:

a.    I graduated from Harvard Law School in 1972 and was admitted to practice law in the Commonwealth of Massachusetts in January 1973.

b.    In 1974, I began the law firm now known as Lesser, Newman & Nasser, LLP.  I have continued to practice law with this firm since 1974.

c.    Since I began the practice of law in 1973, over 90 percent of my practice has been dedicated to litigation, either civil or criminal.

d.    I have been involved in litigation in the area of adult entertainment law for approximately 20 years.

e.    I have been counsel in adult entertainment litigation in Tyngsborough, Brockton, Chicopee, Fall River, and Springfield, Massachusetts.

f.    I was counsel in two leading adult entertainment cases, cited by the defendants in their pleadings, D.H.L. Assocs. v. O'Gorman, 199 F.3d 50 (1st Cir. 1999), and Mendoza v. Licensing Bd., 444 Mass. 188 (2005).

g.    I have also been counsel in a significant number of cases in the field of adult entertainment which did not involve litigation.

2

h.   Adult entertainment law is a specialized area of the law and few attorneys practice adult entertainment law in Massachusetts.

i.   I am a long-time member of the First Amendment Lawyers Association, ("FALA"), the leading organization dedicated to the preservation of First Amendment rights in the field of adult entertainment.  I am one of three lawyers in Massachusetts who belong to FALA.  The other two attorneys are based in the Boston area.

6.  Based on my 20 years of experience in the adult entertainment field, I have found few attorneys who regularly practice adult entertainment law in Massachusetts.  The other attorneys who regularly practice adult entertainment law are based in the Boston area.

7.  I would consider the community of lawyers with reasonably similar skills, reputation and experience to myself, who practice adult entertainment law, to be a state-wide community.  In this case, Showtime, which was based in Central Massachusetts, came to western Massachusetts to hire me, based on my reputation in the field of adult entertainment.

8.  The Complaint in this matter involved important constitutional issues.  This Court had to determine whether two bylaws impermissibly burdened Showtime's First Amendment-protected freedom to present adult entertainment.  Mendon presented a

3

vigorous defense with regard to each bylaw.

9. Showtime prevailed on all the issues decided by this Court, which are the subject of this petition for fees.

This Court reversed the District Court, finding that Mendon's proffered governmental interests, "although theoretically substantial in their own right, are not what prompted Mendon's amendments to the bylaws." Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 78 (1st Cir. 2014). To the contrary, the Court found that Mendon's "true primary concern" was "the type of patrons thought to visit adult entertainment establishments." Id. at 77. Accordingly, this Court granted summary judgment to Showtime.

10. It is my experience that it is undesirable to be an attorney associated with adult entertainment. Many people I meet are offended by adult entertainment on moral and/or political grounds and express negativity toward attorneys, such as myself, who are willing to represent adult entertainment establishments.

11. The hours expended by myself, Lisa Kent, and Michael Aleo on Counts III through VI include the following:[1]

     a.   Time of Lisa Kent

---

[1] I have attempted to provide a conservative computation of hours. I have not included time spent in phone calls with opposing counsel, time spent in conversations with my client, emails, and/or short office conferences. I have also omitted any hours specifically involved in the litigation of counts I-II or VII.

| | | |
|---|---|---:|
| 9/9/2010 | Draft legal memorandum regarding pre-enactment evidence | 1.0 |
| 9/10/2010 | Research regarding preenactment evidence | 0.67 |
| 9/23/2010 | Review DVD of town meeting; review 2008 planning board meeting minutes | 3.17 |
| 9/24/2010 | Review planning board and zoning bylaw review committee meeting minutes and 10/7/2008 town meeting | 3.83 |
| 9/27/2010 | Draft complaint (not including Counts I and II) | 1.0 |
| 10/4/2010 | Draft complaint (not including Counts I and II) | 1.0 |
| 10/6/2010 | Prepare summons and motion to continue; correspondence with Mendon's Attorney, Brandon Moss, regarding same | 1.5 |
| 10/7/2010 | Prepare memorandum regarding pre-enactment evidence | 4.33 |
| 10/8/2010 | Research pre-enactment evidence related to Mendon's special town meeting | 2.33 |
| 10/11/2010 | Draft memo regarding pre-enactment evidence and Mendon's special town meeting | 1.33 |
| 10/29/2010 | Prepare discovery requests | 0.5 |
| 11/3/2010 | Prepare requests for production of documents | 0.67 |
| 11/4/2010 | Prepare requests for production of documents | 0.83 |
| 11/5/2010 | Prepare requests for production of documents | 0.75 |

5

| | | |
|---|---|---|
| 12/9/2010 | Review documents produced by town under a public records request and begin memorandum regarding same | 1.0 |
| 12/14/2010 | Draft memo regarding "secondary effects" related to evidence produced by Mendon | 3.5 |
| 12/16/2010 | Draft memo regarding secondary effects related to evidence produced by Mendon | 2.0 |
| 12/17/2010 | Finalize memo, with exhibits, regarding secondary effects related to evidence produced by Mendon under public records request | 3.0 |
| 12/20/2010 | Review document production from Mendon | 0.5 |
| 12/21/2010 | Review response to request for production of documents | 0.17 |
| 1/24/2011 | Review documents produced by town during discovery and prepare memo regarding same regarding pre-enactment evidence of negative secondary effects | 3.5 |
| 2/15/2011 | Review town's document production for evidence of negative secondary effects; prepare memo regarding same | 1.67 |
| 2/16/2011 | Continued review of towns document production pursuant to RFP | 1 |
| 2/21/2011 | Draft memo regarding town's document production | 2 |
| 2/22/2011 | Review documents regarding evidence of negative secondary effects and prepare memo | 2.67 |
| 2/28/2011 | Finalize summary of "pre-enactment evidence" produced by town pursuant to RFP | 1.75 |

6

3/24/2011 Draft motion to continue scheduling
conference, and communicate with
counsel regarding scheduling
conference                                        .5

4/14/2011 Prepare statement of facts for Second
Motion for Summary Judgment               1.0

4/15/2011 Draft memorandum (Second Motion for
Summary Judgment)                          1.5

4/20/2010 Assist in identifying documents for
motions for second and third summary
judgment                                   .1

4/21/2010 Prepare motion papers for summary
judgment motions                          1.5

4/22/2011 Start draft memorandum (Third Motion
for Summary Judgment)                      2.5


                                    Total hours   52.77


        b.   Time of Michael Aleo

10/25/2011 Review documents produced through
discovery                                  4.0

10/26/2011 Draft memorandum (Second Motion for
Summary Judgment)                          2.2

10/28/2011 Draft memorandum (Second Motion for
Summary Judgment)                          7.5

10/29/2011 Draft memorandum (Second Motion for
Summary Judgment)                          8.0

11/23/2011 Draft memorandum (Second Motion for
Summary Judgment);  confer with
Attorney Lesser regarding same             5.0

11/30/2011 Draft memorandum (Second Motion for
Summary Judgment)                         10.25

```
12/1/2011  Draft memoranda (Second and Third
           Motions for Summary Judgment) and
           revise statement of facts for Third
           Motion for Summary Judgment            11.5

12/2/2011  Draft memorandum, revise statement of
           facts, research case law (Third
           Motion for Summary Judgment); revise
           appendix for Second Motion             11.25

12/4/2011  Revise memoranda (Second and Third
           Motion for Summary Judgment)            5.4

12/5/2011  Revise memoranda (Second and Third
           Motion for Summary Judgment)            5.75

12/6/2011  Revise memoranda (Second and Third
           Motion for Summary Judgment);
           finalize and file Second and Third
           Motions for Summary Judgment (Second
           Motion for Summary Judgment & 5-6)
           (with memorandum, statement of facts,
           and exhibits)                           6.25

2/15/2012  Review Mendon's Opposition to Second
           and Third Motions for Summary
           Judgment, begin reply memoranda         3.0

2/20/2012  Draft reply brief to Second Motion
                                                   5.5

2/21/2012  Draft reply brief to Second Motion
                                                   4.5

2/22/2012  Draft reply brief to Second Motion     4.5

2/23/2012  Draft reply brief to Second Motion     3.25

2/24/2012  Draft Reply briefs to Second and
           Third Motions                           8.25

3/22/2012  Draft reply brief to Second Motion;
           research case law regarding same        5.5

3/23/2012  Draft Reply briefs to Second and
           Third Motion                            6.75

3/24/2012  Draft Reply briefs to Second and       4.25
```

8

|            | Third Motion                                                                                                                               |      |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------|------|
| 3/25/2012  | Draft reply brief to Third Motion                                                                                                           | 2.5  |
| 3/26/2012  | Draft Reply briefs to Second and Third Motion                                                                                               | 2.0  |
| 3/27/2012  | Draft Reply briefs to Second and Third Motion                                                                                               | 2.0  |
| 3/28/2012  | Draft Reply to Second Motion                                                                                                                | 1.25 |
| 3/29/2012  | Draft Reply briefs to Second and Third Motion                                                                                               | 5.0  |
| 3/30/2012  | Finalize Showtime's Reply to Second and Third Motions for Summary Judgment (with supplemental statements of facts and appendix)             | 7.5  |
| 6/4/2012   | Read and analyze Mendon's Sur-Reply to Second and Third Motions                                                                             | 1.75 |
| 6/11/2012  | Research case law relied on in Mendon's sur-reply to Second Motion                                                                          | 0.75 |
| 6/20/2012  | Draft response to Mendon's Sur-Reply to Third Motion                                                                                        | 4.0  |
| 6/21/2012  | Draft response to Mendon's Sur-Reply to Third Motion                                                                                        | 2.5  |
| 6/26/2012  | Draft response to Mendon's Sur-Reply to Third Motion                                                                                        | 2.5  |
| 6/27/2012  | Finalize and file Showtime's Sur-Reply to Third Motion                                                                                      | 5.0  |
| 8/9/2012   | Review District Court's Order concerning Second and Third Motions for Summary Judgment                                                      | 1.25 |
| 9/14/2012  | Prepare and file Notice of Appeal                                                                                                           | 3.0  |
| 9/17/2012  | Prepare Docketing Statement for First Circuit appeal                                                                                        | .75  |

| | | |
|---|---|---|
| 9/18/2012 | Draft preliminary sections to appellate brief | 2.5 |
| 9/19/2012 | Draft appellate brief | 5.0 |
| 9/20/2012 | Prepare and file Notice of Appearance and Docketing Statement | .75 |
| 10/22/2012 | Prepare for and attend Settlement Conference; confer with Thomas Lesser regarding same | 8.0 |
| 10/23/2012 | Discussions with opposing counsel and client regarding settlement discussions | 3.0 |
| 10/24/2012 | Discussions with opposing counsel and client regarding settlement discussions | 1.0 |

|  |  |  |
|---|---|---|
| | Total hours from 2011 through 2012 | 184.6 |

| | | |
|---|---|---|
| 1/28/2013 | Research case law for First Circuit brief | 2.0 |
| 1/29/2013 | Draft brief for First Circuit | 1.75 |
| 1/30/2013 | Draft brief for First Circuit | 1.5 |
| 1/31/2013 | Draft brief for First Circuit | 6.5 |
| 2/1/2013 | Draft brief for First Circuit | 5.0 |
| 2/2/2013 | Draft brief for First Circuit | 4.5 |
| 2/3/2013 | Draft brief for First Circuit | 2.5 |
| 2/4/2013 | Draft brief for First Circuit | 2.0 |
| 2/5/2013 | Draft brief for First Circuit | 3.0 |
| 2/6/2013 | Draft brief for First Circuit | 5.0 |

| | | |
|---|---|---|
| 2/11/2013 | Draft brief for First Circuit | 2.0 |
| 2/12/2013 | Draft brief for First Circuit | 3.0 |
| 2/13/2013 | Assemble Addendum | 2.5 |
| 2/14/2013 | Assemble Appendix | 4.0 |
| 2/15/2013 | Draft brief for First Circuit | 3.0 |
| 2/17/2013 | Draft brief for First Circuit | 6.5 |
| 2/18/2013 | Draft brief for First Circuit | 5.0 |
| 2/19/2013 | Finalize and file Showtime's Principal Brief | 10 |
| 5/1/2013 | Review Mendon's Response Brief | 2.0 |
| 5/21/2013 | Draft reply brief for First Circuit | 2.5 |
| 5/22/2013 | Draft reply brief for First Circuit; review articles relied upon in Mendon's Response | 10.0 |
| 6/13/2013 | Draft reply brief for First Circuit | 2.0 |
| 6/17/2013 | Draft reply brief for First Circuit | 3.0 |
| 6/18/2013 | Draft reply brief for First Circuit | 5.0 |
| 6/19/2013 | Draft reply brief for First Circuit; review article relied upon in Mendon's Response Brief | 5.0 |
| 6/20/2013 | Draft reply brief for First Circuit | 3.0 |
| 6/21/2013 | Finalize and file Showtime's Reply brief for First Circuit | 6.0 |
| 10/9/2013 | Oral Argument preparation | 3.0 |
| 10/10/2013 | Oral Argument preparation | 6.0 |

Total hours for 2013   117.25

11

| 10/8/2014 | Review Memorandum and Order | 1.0 |
| 10/21/2014 | Review requirements for filing fee petition and prepare petition | 1.5 |
| 12/9/2014 | Prepare fee petition | 1 |
| 1/22/2015 | Prepare fee petition | 1 |
| 1/23/2015 | Prepare fee petition | 1 |
| 1/26/2015 | Prepare fee petition | 2 |
| 2/2/2015 | Prepare fee petition | 3.5 |
| 2/3/2015 | Prepare fee petition | 3 |
| 2/4/2015 | Prepare, finalize and file fee petition | 4.5 |

Total hours for 2014 18.5
through the present

c.   Time of Thomas Lesser

| 9/10/10 | Review Lisa Kent memo re bylaws and pre-enactment evidence | 1.5 |
| 9/24/10 | Preparation of complaint (counts III-VI only) | 2.0 |
| 10/12/10 | Review Lisa Kent memo re Town meeting at which bylaws passed | .75 |
| 11/08/10 | Review, revise request for production of documents | .5 |
| 1/2/11 | Review Mendon town records, town meeting CD Review Lisa Kent memo re document production | 2.0 1.0 |
| 2/28/11 | Review documents produced by Mendon | 3.0 |
| 3/2/11 | Review documents produced by Mendon | 6.0 |

12

| | | |
|---|---|---|
| 9/5/11 | Preparation and revision of answers to Interrogatories | |
| | 1.75 | |
| 11/23/11 | Conference with Michael Aleo re: summary judgment pleadings to be filed | .5 |
| 12/2/11 | Review case law in preparation for summary judgment motion | 6.0 |
| | Review and revise draft summary judgment pleadings | 4.0 |
| 12/3/11 | Review and revise draft summary judgment Pleadings | 5.0 |
| 12/4/11 | Revise draft summary judgment pleadings | 10.0 |
| 12/5/11 | Revise summary judgment pleadings | 6.0 |
| 12/6/11 | Revise final summary judgment pleadings | 2.0 |
| 3/21/12 | Review Mendon's opposition to third motion for summary judgment | 2.0 |
| | Review case law cited by defendants | 3.5 |
| 3/22/12 | Revise reply brief re: third motion for summary judgment | 4.0 |
| 3/23/12 | Revise reply brief re: third summary judgment motion | 8.0 |
| 3/26/12 | Review Mendon's opposition to second motion for summary judgment Prepare reply brief re: second motion for summary judgment | 8.0 |
| 3/29/12 | Review reply brief re third summary judgment motion; prepare reply brief | 9.0 |
| 3/30/12 | Revise final memoranda re: second and third motions for summary judgment | 4.0 |
| 6/24/12 | Review defendants' sur-reply, case law cited | 4.0 |
| 6/25/12 | Review studies cited by defendant Revise response to defendant's sur-reply | 2.0 4.0 |

13

| | | |
|---|---|---|
| 6/26/12 | Revise response to defendants' sur-reply | 2.0 |
| 6/27/12 | Revise, finalize Showtime's response to defendants' sur-reply to third summary judgment motion | 1.5 |
| 2/11/13 | Review case law for First Circuit brief, review draft brief | 8.0 |
| 2/12/13 | Review briefs from Alameda, similar adult entertainment cases, case law | 6.0 |
| 2/14/13 | Revise statement of issues, statement of cases, statement of facts | 3.0 |
| 2/15/13 | Revise brief, prepare strict scrutiny portion, review case law | 8.0 |
| 2/17/13 | Revise brief, review traffic study | 9.0 |
| 2/18/13 | Revise brief | 8.0 |
| 2/19/13 | Revise brief | 5.0 |
| 2/21/13 | Revise brief | 5.0 |
| 6/13/13 | Review Mendon brief in opposition, draft reply brief, review case law cited by Mendon | 4.0 |
| 6/17/13 | Review studies and articles cited by Mendon in its brief, prepare portions of reply brief related to studies | 5.0 |
| 6/18/13 | Revise reply brief | 2.5 |
| 6/19/13 | Revise reply brief | 4.5 |
| 6/20/13 | Revise reply brief | 6.5 |
| 6/21/13 | Review, finalize reply brief | 4.0 |
| 10/8/13 | Review pleadings, case law in preparation for oral arguments | 6.0 |
| 10/9/13 | Prepare for oral argument | 8.5 |
| 10/10/13 | Oral argument in Boston | 7.5 |

14

| 1/30/15 | Emails and telephone calls to Ken Tatarian, John Pucci, Steve Schwartz re: fee affidavits | 1.0 |
|---------|---|---|
|         | Preparation of affidavits in support of Motion for fees | 1.5 |
| 2/2/15  | Revisions to motion for fees documents | 4.0 |
| 2/3/15  | Revisions to motion for fees documents | 5.0 |
| 2/4/15  | Revisions to motion for fees documents | 5.25 |
|         | Total hours from 2010 to present | 219.5 |

12. The total hours by each attorney on this litigation are as follows:

(a) Thomas Lesser, 219.5 hours. At a rate of $400 per hour, the fee awarded would be $87,800. At a rate of $350 per hour, the fee awarded would be $76,825.

(b) Lisa Kent, 52.77 hours. At a rate of $250 per hour, the fee awarded would be $13,192.50. At a rate of $200 per hour, the fee awarded would be $10,554.

(c) Michael Aleo, 320.35 hours. At a rate of $250 per hour, the fee awarded would be $80,087.50. At a rate of $200 per hour for the time period of 2011 through 2012 (184.6 hours), $225 per hour for 2013 (117.25 hours), and $250 per hour for 2014 through the present (18.5 hours), the fee awarded would be $67,926.25.

The costs incurred during the litigation include the

15

following:

(a) 5,119 pages of documents and drafts of pleadings during the District Court litigation printed using the resources located within counsel's offices.[2]  The calculation omits thousands of pages that counsel printed that could potentially be construed as either duplicative or unnecessary.  Calculated at a rate of $.10 per page, the cost for printing these pages totals $511.90.

(b) Professional printing and binding costs in the amount of $336.37, as follows: (i) on February 19, 2013, printing and binding of Showtime's Principal Brief (with appendix) $285.11; and (ii) on June 21, 2013 printing and binding of Showtime's Reply brief $51.26.

(c) Filing fees in the amount of $455 to the First Circuit.

Showtime's total costs associated with this litigation are $1,303.27.


DATE: February 4, 2015                    */s/ Thomas Lesser* _____

---

[2] The claimed pleadings and documents include principal briefs, oppositions, replies, and sur-replies, as well as accompanying declarations of fact and lengthy appendixes.

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

_____
                                    )
SHOWTIME ENTERTAINMENT LLC,         )      NO. 12-2121
                                    )
     Plaintiff-Appellant,           )
                                    )      AFFIDAVIT OF MICHAEL ALEO
v.                                  )      IN SUPPORT OF
                                    )      PLAINTIFF-APPELLANT
TOWN OF MENDON, ET AL.              )      SHOWTIME'S MOTION FOR
                                    )      ATTORNEYS FEES AND COSTS
     Defendants-Appellees           )
_____ )


     I, Michael Aleo, swear under the pains and penalties of
perjury:

     1.   I represent the plaintiff, Showtime Entertainment LLC
("Showtime"), in the above-captioned proceeding.  I submit this
affidavit in support of an award of attorney fees for the time I
expended in litigating counts III through VI of the plaintiff's
complaint.

     2.   I have been licensed to practice law since 2006, and I
have been a member in good standing of the Massachusetts bar since
2008.

     3.   I am currently an associate at the law offices of
Lesser, Newman, & Nasser, LLP in Northampton, Massachusetts.

     4.   Prior to joining Lesser, Newman, & Nasser in 2011, my
background was in civil rights litigation.  I was a staff attorney
at the Lawyers' Committee for Civil Rights from 2008 to 2011.  At
the Lawyers' Committee, I acted as lead counsel on a variety of

1

civil rights actions, including matters involving employment and housing discrimination.

5.  Prior to joining the Lawyers' Committee for Civil Rights, I worked as an associate at Bernabei & Wachtel in Washington, D.C., where I practiced employment litigation.

6.  Throughout the time that I have practiced law, I have also taught legal writing and research, including at American University School of Law, Golden Gate University School of Law, New England Law Boston, and Bay Bath College.

7.  I have authored articles on discrimination in the workplace on the basis of pregnancy, as well as the availability of disparate impact claims under the Fair Housing Act and the Equal Credit Opportunity Act.

8.  I received my Juris Doctor from American University Washington School of Law in 2006, cum laude, where I was an editor on the American University Law Review and was recognized for the pro bono work that I performed while earning my degree.

9.  I expended a total of 320.35 hours on this case. The hours are accurately set forth in the affidavit of Thomas Lesser and reflect the contemporaneous time records which I made daily and which are available upon request.

10.  My usual hourly rate was $200 in 2011 and 2012, $225 in 2013, and $250 in 2014.

2

11.   The petition for fees has been filed in a timely manner.   Under Local Rule 39.1(b), which this Court's Clerk's office confirmed was the appropriate Local Rule, fee applications are to be "filed with the clerk of the court of appeals within 30 days of the date of entry of the final circuit judgment, whether or not attorney fees had been requested in the trial court...." The Rule further clarifies, "For purposes of the 30-day limit, a judgment must not be considered final until the time for filing an appeal or a petition for a writ of certiorari has expired, or judgment is entered by the court of last resort."

12.   In this case, the Court issued its judgment on October 8, 2014.   Under United States Supreme Court Rule 13, the period for filing a writ of certiorari expired 90 days from the date of this Court's judgment, or, in this case, on January 6, 2015. Accordingly, Showtime had until February 5, 2015, 30 days from the January 6, 2015, expiration of the period for filing certiorari, to file its fee application.

Dated: February 4, 2015          */s/ Michael Aleo*

3

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

| | | |
|---|---|---|
| SHOWTIME ENTERTAINMENT LLC, | ) | NO. 12-2121 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | AFFIDAVIT OF LISA KENT |
| v. | ) | IN SUPPORT OF |
| | ) | PLAINTIFF-APPELLANT |
| TOWN OF MENDON, ET AL. | ) | SHOWTIME'S MOTION |
| | ) | FOR ATTORNEYS FEES |
| Defendants-Appellees | ) | AND COSTS |
| | ) | |

I, Lisa Kent, swear under the pains and penalties of perjury:

1.    I represented the plaintiff, Showtime Entertainment LLC ("Showtime"), in the above-captioned proceeding.    I submit this affidavit in support of an award of attorney fees for the time I expended in litigating counts III and VI of the plaintiff's complaint.

2.    I have been licensed to practice law since 1992.

3.    I am currently a shareholder in the firm of Esser Kent in Greenfield, Massachusetts.

4.    When I began working on the Showtime case, I was an associate at Lesser, Newman & Nasser, LLP, in Northampton, Massachusetts, where my practice was focused on civil litigation.

5.    Prior to joining Lesser, Newman & Nasser, I was a Deputy Counsel with the New Jersey State Legislature in Trenton, New Jersey for two years. As a Deputy Counsel, I drafted legislation and provided members of the Legislature with legal opinions regarding the constitutionality of proposed legislation and regulations.

6.    Prior to serving the New Jersey Legislature, I worked as an associate in the Princeton, New Jersey office of the Philadelphia law firm of Drinker, Biddle and Reath (for three years). My presence at the firm included complex commercial, insurance, and trust and estate litigation.

7.    Prior to my association with Drinker, Biddle and Reath, I was an associate with Smith, Stratton, Wise, Heher and Brennan in Princeton, New Jersey, where my practice focused on insurance litigation.

8.    I graduated from the Rutgers University School of Law in Newark, New Jersey in 1992, where I was an editor of the Rutgers Computer and Technology and Law Journal. I was admitted to the New Jersey and Pennsylvania Bars in 1992 and to the Massachusetts Bar in 2002.

9.    I expended a total of 52.77 hours litigating counts III and VI. The hours are accurately set forth in the affidavit of Thomas Lesser.  The hours are taken from

contemporaneous time records which I made daily and which
are available upon request.


Dated: February 3, 2015

Lisa Kent

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

_____
                                )
SHOWTIME ENTERTAINMENT LLC,     )    NO. 12-2121
                                )
     Plaintiff-Appellant,       )    AFFIDAVIT OF
                                )    STEVEN J. SCHWARTZ
v.                              )    IN SUPPORT OF
                                )    PLAINTIFF-APPELLANT'S
TOWN OF MENDON, ET AL.          )    PETITION FOR FEES
                                )
     Defendants-Appellees       )
_____ )


     I, Steven J. Schwartz, hereby depose and say as follows:

I.   Background and Experience

     1.   I graduated cum laude from the Harvard Law School
in 1971.  I am an attorney licensed to practice law in the
Commonwealth of Massachusetts since 1971.  I am also a
member of the bars of the United States Supreme Court, the
Court of Appeals for the First, Third, Tenth, and Eleventh
Circuits, and the Districts of Massachusetts, Florida, New
Mexico, and Washington.

     2.   I have litigated a large number of injunctive and
damage actions on behalf of persons with disabilities,
including many civil rights cases that are brought under 42
U.S.C. § 1988 and other fee-shifting statutes.  I have been
lead counsel in numerous complex federal civil rights cases
in Massachusetts and several other states involving
institutionalized persons with disabilities.

1

3.    In many of these cases, I have litigated fee claims and argued fee motions in the district court of Massachusetts and other trial courts, as well as several fee appeals in the First Circuit Court of Appeals.

4.    I am the legal director of the Center for Public Representation in Northampton, Massachusetts.  The Center is a national public interest law firm dedicated to representing persons with disabilities and other institutionalized citizens.  I am also the litigation director of the Foundation for Justice, a non-profit organization formed to ensure the full enforcement of the rights of persons with disabilities through civil rights and damage litigation, which is also located in Northampton, Massachusetts.

II.  Role in This Case

5.    I have been asked to provide an opinion on a reasonable hourly rate for the work done in this case.  I have reviewed the affidavit of lead counsel, Thomas Lesser, whom I have known for over forty years, as well as other fee affidavits submitted in support of the plaintiffs' motion.  I have not reviewed the other legal documents in this matter.

III. Familiarity with Mr. Lesser's Legal Experience,
     Skills, and Cases

    6.   I have worked closely with Thomas Lesser in
various professional capacities for almost four decades.
We have co-counseled several civil rights cases, including
one brought on behalf of an institutionalized woman with
mental illness.  I have referred him several complex civil
rights cases that our firm could not handle.  I am familiar
with his representation of other individuals and groups in
complex constitutional litigation, including several First
Amendment cases.  He has a highly successful, statewide
civil rights practice that is not limited to western
Massachusetts where his office is located, but instead
includes clients and cases throughout the Commonwealth.

    7.   Based upon this lengthy professional relationship
and multiple civil rights cases, I am highly familiar with
Mr. Lesser's legal experience, skills, and legal endeavors.
I know Mr. Lesser to be one of the two or three leading
civil rights attorneys in western Massachusetts, and one of
the leading constitutional litigators throughout the
Commonwealth.  He has achieved remarkable success for his
clients in complex civil rights litigation and is widely
sought after by clients seeking to assert protected
constitutional rights.  He is an exceptional litigator, one

willing to accept unpopular cases and represent often
unpopular clients in order to ensure that their rights our
vigorously protected and that our Constitution is
vigorously defended.

IV.   Reasonable Rates

8.   In determining a reasonable hourly rate, the
Supreme Court has made it clear that starting point is the
market rate for an attorney with similar experience,
skills, and reputation. *Blum v. Stenson,* 465 U.S. 886, 895
(1984).  Mr. Lesser, with forty years of experience doing
controversial civil rights and complex constitutional
litigation, as well as a reputation as a skillful litigator
with a statewide civil rights practice, is at the very high
end of relevant market rates.

9.   The next question that the First Circuit and the
lower courts must address is "what is the relevant market?"
Given his statewide practice, statewide reputation, Mr.
Lesser's hourly rate is properly based upon a statewide
market that specializes in constitutional and civil rights
litigation.

10.   In several of my statewide class action cases
litigated in the Western Division of the United States
District Court for Massachusetts, the courts have deemed
the relevant market for my work to be based upon statewide

hourly rates that reflect the statewide importance and
scope of the case.  In doing so, they look, in part, to the
Greater Boston market as guidance in determining a
reasonable rate.  For instance, in *Rosie D. v. Patrick,*
Judge Ponsor considered the statewide market for disability
rights litigation and awarded me $425/hour for time spent
between 1999-2007, and $450/hour for work performed between
2009-2011.  *Rosie D. v. Patrick,* 593 F. Supp. 2d 325, 331
(D. Mass. 2009); Order of February 12, 2012.  Similarly, in
*Hutchinson v. Patrick,* Judge Ponsor adopted a similar rate
for similar time periods, relying upon statewide rates
reflected in the Boston market.  *Hutchinson v. Patrick,* 683
F. Supp. 2d 121 (D. Mass. 2010).  These rates were affirmed
as reasonable by this Court, which noted that the awarded
rates actually were considerably lower than the market
rates for private attorneys practicing in the Boston
market.  *Hutchinson v. Patrick,* 636 F.3d 1, 16 (2011).
Finally, in *Rolland v. Patrick,* Judge Neiman awarded
similar, but slightly lower rates ($390/hour) for work
undertaken in 2009-2010, explicitly adopting a statewide
rate analysis.  *Rolland v. Patrick,* 725 F. Supp. 2d 75 (D.
Mass.  2011).

    11.  This reasoning, and these rates, should apply
with equal force to this case.  The First Amendment issues

litigated here are in no way local, or limited to specific towns in western Massachusetts. More importantly, the few attorneys who undertake these cases and specialize in these constitutional issues are drawn from across the Commonwealth. Thus, private clients paying these counsel their standard hourly rates are required to pay hourly rates that are determined by a statewide market and are not driven by western Massachusetts rates. Finally, the impact of litigation that vindicates constitutional rights is deemed of regional and national import, and is not localized to a particular county where the attorney's office is located or where the courthouse is situated.

12. In my opinion, based upon my longstanding familiarity with the quality of Mr. Lesser's legal work and the unique expertise he brings to First Amendment litigation, I believe that his requested rate of $400/hour is more than reasonable. Moreover, it is considerably below the statewide rate, as reflected in the Greater Boston market, for similar work by similarly experienced attorneys. Finally, it is more than 25% lower than I have been awarded by judges sitting in the district court of western Massachusetts for similarly complex civil rights litigation.

Signed and sworn this 31st day of January, 2015.

6

Steven J. Schwartz

7

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

```
                                )
SHOWTIME ENTERTAINMENT LLC,     )      NO. 12-2121
                                )
     Plaintiff-Appellant,       )
                                )      AFFIDAVIT OF
                                )      KENNETH TATARIAN
v.                              )      IN SUPPORT OF
                                )      PLAINTIFF-APPELLANT'S
TOWN OF MENDON, ET AL.          )      PETITION FOR FEES
                                )
     Defendants-Appellees       )
                                )
```

I, Kenneth Tatarian, swear under the pains of perjury that the following is true to the best of my knowledge:

1.   I am an attorney licensed to practice law in the Commonwealth of Massachusetts and am giving this affidavit at the request of Thomas Lesser in regard to his motion for the award of attorney fees and costs in this action.

2.   I am and have been a member of the bar in good standing in the Commonwealth of Massachusetts since 1973. I have read the decision of this Court issued October 8, 2014, granting partial summary judgment to Showtime Entertainment.

3.   I am familiar with the legal principles which were addressed in the Court's decision in this action. I have served since 1974 as principal or sole counsel in cases litigating such principles and similar issues, and in advising clients whose adult entertainment business interests raise such issues.

.

1

4.    To the best of my knowledge, there are three attorneys in Massachusetts who currently have an active practice litigating cases on behalf of clients engaged in adult entertainment businesses, and Thomas Lesser is one of them. I know that Attorney Lesser was lead counsel in D.H.L. Associates, Inc. v. O'Gorman, 199 F.3d 50 (1st Cir. 1999), and Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188 (2005), and that he has had substantial experience in other cases raising similar issues.

5.    The First Amendment Lawyers Association (FALA) is a national organization of approximately 180 members who defend or advocate for rights, especially speech rights, protected by the First Amendment to the United States Constitution and by cognate state provisions.  Many members of FALA are attorneys who advise or represent businesses such as the Plaintiff in this action.  The organization's web site can be viewed at http://firstamendmentlawyers.org/ and a list of its members is available to the public at that site, and includes Attorney Lesser.

6.    I was a member of FALA from 1978 to 2013, and served in various officer positions within this organization, including as President in 1986. FALA holds semi-annual conferences presenting continuing education programs relevant to representing businesses such as that of the Plaintiff in this action, and makes program materials available to all members on line. In addition, members

2

frequently exchange or share information, including briefs, memoranda, and court decisions, relating to such businesses.

7.     Both through my activities while a member of FALA and by conversations with other Massachusetts attorneys who are members of FALA, I have informally learned of the rates which are charged by Massachusetts attorneys who practice in the "adult entertainment" area.  In the case of T & D Video v. Revere, I testified in the Superior Court concerning the rates charged by H. Glenn Alberich, who is another FALA member practicing in the Commonwealth and who served as the attorney for T & D Video. His rates ranged from a low of $400 per hour in 1996, with increases thereafter during the course of his representation.

8.     I understand from Mr. Lesser that his customary hourly rate charged to and paid by clients is $350 per hour. To my knowledge and information, as well as in my personal experience, the rate of $350 per hour is at the lower end of the range of rates charged for such work by attorneys in Massachusetts with experience similar to that of Mr. Lesser.

Signed and sworn to under the pains and penalties of perjury this 3rd day of February 2015.

Kenneth N, Tatarian
Kenneth Tatarian

3

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

|  |  |  |
|---|---|---|
| SHOWTIME ENTERTAINMENT LLC, | ) | NO. 12-2121 |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) | AFFIDAVIT OF JOHN PUCCI |
| v. | ) | IN SUPPORT OF |
|  | ) | PLAINTIFF-APPELLANT'S |
| TOWN OF MENDON, ET AL. | ) | PETITION FOR FEES |
|  | ) |  |
| Defendants-Appellees | ) |  |
|  | ) |  |

I, John Pucci, swear under the pains and penalties of perjury that the following is true to the best of my knowledge and belief:

1.    I have been an attorney in good standing licensed to practice in the Commonwealth of Massachusetts since 1980.

2.    I received my Juris Doctor from Boston College Law School in 1980.

3.    I am a member of the bars of the District of Massachusetts, District of Connecticut, Eastern District of Pennsylvania, First Circuit Court of Appeals, Third Circuit Court of Appeals, and the United States Supreme Court.

4.    I have been a litigator for over 30 years, including my work as an Assistant U.S. Attorney in Philadelphia, Pennsylvania, a Chief of the U.S. Attorney's Office in Springfield, Massachusetts, a partner at Fierst, Pucci & Kane, and currently as a member of Bulkley Richardson's Litigation/Alternative Dispute Resolution Department in Springfield and Boston, Massachusetts.

5.    I have been a fellow of the American College of Trial Lawyers since 2002; earned a Martindale-Hubbell AV Preeminent Peer Review Rating; have been selected, since 2005, by my peers for inclusion in The Best Lawyers in America in the areas of criminal defense (white collar and non-white collar); have been included in Boston Magazine's Massachusetts Super Lawyers list since 2005; and was named by the publication as one of the top 100 lawyers in Massachusetts from 2007 to 2009.   I also received the Department of Justice's Distinguished Service Award in 1991 for my trial work while in the Department of Justice.

6.    I have taught numerous Massachusetts Continuing Legal Education seminars on various aspects of civil and criminal litigation.

7.    I currently specialize in litigation and regularly practice in the federal courts in Massachusetts.

8.    I am very familiar with the experience and quality of the legal work of Thomas Lesser and his law firm.   I have known the quality of his work for over 15 years.

9.    The law applicable to the regulation of adult entertainment is considered complex constitutional litigation.

10.   Attorney Lesser is one of a relatively small number of attorneys in Massachusetts who, to the best of my knowledge, are experienced in providing legal services to adult entertainment establishments.

11.   I   would   consider   representing   adult   entertainment establishments   to   be   unpopular   both   with   the   public   and   with prospective clients.

12.   I am familiar with the market rate for attorneys doing complex litigation in western Massachusetts.

13.   The   fair   hourly   rate   for   adult   entertainment   cases appropriately   should   be   considered   on   a   state-wide   basis,   which would   be   higher   than   the   rates   in   western   Massachusetts,   given   the small number of attorneys who do such work.

14.   Based on my experience, a fair hourly rate for complex civil   litigation   in   Western   Massachusetts   is   a   minimum   of   $200.00 per   hour   for   junior   associates,   $250.00   an   hour   for   more experienced   associates,   and   for   an   attorney   of   Mr.   Lesser's experience and skill $350.00 an hour.

15.   Based   on   my   knowledge   of   Mr.   Lesser's   skill   and experience in this area, his requested rate of $350.00 per hour is more than fair for the services rendered by him in this matter.

Dated:   January 30, 2015                    _____

John Pucci

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

_____

|  |  |  |
|---|---|---|
| SHOWTIME ENTERTAINMENT LLC, | ) | NO. 12-2121 |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) | PLAINTIFF-APPELLANT'S REPLY |
| v. | ) | TO APPELLEES' OPPOSITION |
|  | ) | TO SHOWTIME ENTERTAINMENT'S |
| TOWN OF MENDON, ET AL. | ) | MOTION FOR ATTORNEYS FEES AND |
|  | ) | COSTS |
| Defendants-Appellees | ) |  |
|  | ) |  |

_____

Now comes the plaintiff-appellant, Showtime Entertainment LLC, ("Showtime"), in response to the Town of Mendon's ("Mendon") opposition to Showtime's motion for attorney fees and costs, pursuant to Federal Rule of Appellate Procedure 27(a)(4).

I.    <u>INTRODUCTION</u>.

The Town of Mendon ("Mendon") has submitted a twenty (20) page opposition to Showtime's motion for attorney fees and costs, with four primary arguments.  But none of those arguments, which are addressed below, have merit.

To put the issue of attorneys fees in context, from the beginning of this litigation, Mendon has hotly contested Showtime's claims that a number of Mendon bylaws, all directed exclusively at adult entertainment establishments, were unconstitutional.  Although Mendon prevailed in the United States District Court at summary judgment, this Court found that the rationales for the three bylaws that are the subject of this fee petition, "[a]lthough theoretically substantial in their own right, are not what prompted Mendon's amendments to the bylaws."  <u>Showtime Ent'mt, LLC v.</u>

1

Town of Mendon, 769 F.3d 61, 78 (1st Cir. 2014). Accordingly, this Court reversed the District Court, found the three bylaws unconstitutional under the First Amendment and granted summary judgment to Showtime.

Given this Court's decision, it is now time for Mendon to pay fair compensation to Showtime for the time that its counsel spent litigating the case that it has so vigorously fought for the past five years.

II.   THIS COURT, NOT THE DISTRICT COURT, SHOULD DETERMINE THE APPROPRIATE AMOUNT OF ATTORNEYS FEES.

Although this Court has the discretion to remand an attorney fee application to the District Court, there is no reason to do so here.

The District Court has had no experience with the case which would enable it to decide attorney fees more fairly than this Court. The District Court held no trial, heard no discovery disputes and did not decide a motion to dismiss. The District Court's only involvement with this dispute was writing a summary judgment decision, which was reversed by this Court. The District Court did not even hear oral argument on the summary judgment issues, instead ruling against Showtime on the papers.

Accordingly, this Court should not delay an attorneys fees award by remanding the issue to the District Court.

III.   MENDON'S CLAIM THAT SHOWTIME'S BILLING WAS DUPLICATIVE, EXCESSIVE OR OTHERWISE UNNECESSARY IS WITHOUT MERIT.

Showtime submitted detailed billing information with its application, based on contemporaneous time slips, making certain to include only time spent litigating the issues decided

by this Court. The hours spent litigating the constitutionality of the alcohol bylaw,[1] were specifically omitted[2] from Showtime's motion for attorney fees. This was in accordance with the procedure approved in <u>Gay Officers Action League v. Puerto Rico</u>, 247 F.3d 288 (2001).

Mendon begins its excessive billing argument by attacking 57 hours that Lisa Kent, an associate, spent (a) listening to and viewing hours of tapes of Mendon municipal meetings, and (b) reading, analyzing and summarizing well over 1,000 pages of documents provided by Mendon, first pursuant to a public records request and then pursuant to discovery requests. Part of Mendon's problem may be that it incorrectly asserts that Ms. Kent prepared a single memorandum. In fact, Ms. Kent prepared four separate memoranda, each addressing a separate issue. By producing four detailed memos, totaling 185 pages with exhibits, Thomas Lesser was able to reduce his hours reviewing the video tapes and documents to 12 hours.[3] Ms. Kent's hours, which will be

---

[1] Two questions related to that issue were certified by this Court to the Supreme Judicial Court.

[2] Mendon complains that Showtime did not explain the "methodology" by which it omitted the time spent on Counts I, II and VII. But Showtime assumed that how counsel did so would be self evident. Counsel looked at the time records, which indicated what time was spent on the various counts. When the time records reflected time spent on counts not before this Court, the time was omitted and not submitted to this Court. A supplemental affidavit of Thomas Lesser attached as Exhibit 1, sets out this "methodology." Also Mendon claims that Showtime did not exclude hours spent litigating Showtime's MCRA claims. But Showtime submitted no request for compensation to this Court for time spent on that issue. In fact, Showtime spent virtually no time on that issue; it was the subject of a short footnote that was based on research and argument from a prior case. As for time spent litigating Counts I and II, those hours were included in an earlier fee petition. There is no overlap between the two petitions.

[3] Ms. Kent's first memorandum set forth the pre-enactment history of the zoning bylaws. With exhibits, it was 34 pages long. The second memorandum outlined the evidence studies presented at the October 7, 2008 special town meeting. With exhibits, that memorandum was 47 pages. The third memorandum (a) analyzed an opinion of Town Counsel that concluded that all three bylaws, which are the subject of this fee petition, served a substantial governmental interest and were narrowly tailored, (b) studies relied on by Mendon, (c) municipal board meeting notes, and

compensated at a much lower rate than Mr. Lesser's, were more than reasonable.

Mendon then goes on to argue, in a scatter-shot approach, that Showtime simply spent too many hours writing briefs, reviewing Mendon's submissions and preparing for oral argument. By way of example, Mendon argues that attorneys Lesser and Aleo were "excessive" where they spent 23.5 hours preparing for oral arguments before the First Circuit. But this was not excessive and was in keeping with the number of hours this Court found reasonable in <u>Grendel's Den, Inc. v. Larking</u>, 749 F.2d 945 (1st Cir. 1984), the case on which Mendon primarily relies for their reduction of attorney fees argument.

Nor does Mendon fare better when it attacks the number of hours spent preparing the District Court and First Circuit briefs. Showtime's counsel spent 129 hours preparing a 47 page First Circuit brief and 63 hours preparing a 29 page reply brief before this Court. Both are reasonable. A rule of thumb for lawyers is that it takes two to three hours to write one page of a memorandum or appellate brief. Here, Showtime spent an average of 2.5 hours per page on those two briefs – in a case with contested constitutional issues, some of which Mendon itself called issues of "first impression." Success in the case was, by no means, guaranteed. Nor were the issues in question based on pure interpretations of law. By and large, they rose or fell based on a complicated procedural fact pattern and a multitude of adult entertainment studies.

Mendon's other arguments are equally meritless. The fact that attorney Lesser spent more time than his associate preparing the appellate briefs should, in no way, as Mendon claims, reduce

---

(d) listed items not provided as of that date by Mendon's discovery. It was nine pages long with 62 pages of exhibits. The fourth memorandum summarized Ms. Kent's further review of discovery documents produced during discovery. With exhibits, it was 30 pages long.

the number of hours this Court awards for attorneys fees.  It was precisely because of "his experience in adult entertainment and constitutional law" this course was chosen.  Mendon's Opp. at 11.  Showtime was entitled to have experienced constitutional counsel take the lead.[4]

As for the 34.9 hours spent preparing the fee petition, Showtime's counsel did far more than simply document hours – the overwhelming majority of the time on the fee petition involved researching fee petition case law, obtaining affidavits from other attorneys, and writing a 14 page memorandum.  Further, Showtime was acutely aware that it should expect a full frontal attack on its fees petition, as had occurred with the fee petition it submitted earlier to the District Court.

IV.    AN HOURLY FEE OF $400 AN HOUR FOR THOMAS LESSER IS APPROPRIATE.

Showtime is entitled to reasonable attorney's fees, which as a starting point are the fees charged by attorneys in the relevant community, with comparable skills, experience and reputation, for similar services.  42 U.S.C. § 1988(b); Blum v. Stenson, 465 U.S. 886 (1984).

Mendon did not seriously contest that the prevailing rate for experienced litigators in western Massachusetts is $350 an hour.[5]  Indeed, Mendon submitted an affidavit from attorney Leonard Keston stating that a market rate for an attorney with "the impeccable credentials of Thomas Lesser" was $350 an hour.

But Mendon did not address the real issue: is the relevant community that this Court should use to determine an appropriate lodestar the state-wide community of lawyers who practice adult

---

[4] Mendon places great stock in the fact that it spent less time preparing its memoranda.  But Mendon prepared fewer pages of memoranda than Showtime, the moving party.

[5] The plaintiff submitted three affidavits, and the defendant submitted two.  The outlier was Mendon's affidavit from attorney Phillip Callan, who suggested $300 an hour was appropriate.  However, his affidavit was a generic affidavit, written without any indication that he knew either of the experience and qualifications of Showtime's attorney or the type of case in which fees were being requested.

entertainment litigation, or is it the community of western Massachusetts litigators?  If it is the former, the appropriate hourly rate is $400 an hour.

Showtime presented three very powerful affidavits in support of the proposition that the Court should look to a state-wide community.  According to Steve Schwartz, Affidavit ¶¶ 9-11, an attorney based in western Massachusetts,

> Given his statewide practice, statewide reputation, Mr. Lesser's hourly rate is properly based upon a statewide market that specializes in constitutional and civil rights litigation. . . . In several of my statewide class action cases litigated in the Western Division of the United States District Court for Massachusetts, the courts have deemed the relevant market for my work to be based upon statewide hourly rates that reflect the statewide importance and scope of the case.  In doing so, they look, in part, to the Greater Boston market as guidance in determining a reasonable rate.  For instance, in Rosie D. v. Patrick, Judge Ponsor considered the statewide market for disability rights litigation and awarded me $425/hour for time spent between 1999-2007, and $450/hour for work performed between 2009-2011.  Rosie D. v. Patrick, 593 F. Supp. 2d 325, 331 (D. Mass. 2009); Order of February 12, 2012. . . .
>
> This reasoning, and these rates, should apply with equal force to this case.  The First Amendment issues litigated here are in no way local, or limited to specific towns in western Massachusetts.  More importantly, the few attorneys who undertake these cases and specialize in these constitutional issues are drawn from across the Commonwealth.  Thus, private clients paying these counsel their standard hourly rates are required to pay hourly rates that are determined by a statewide market and are not driven by western Massachusetts rates.  Finally, the impact of litigation that vindicates constitutional rights is deemed of regional and national import, and is not localized to a particular county where the attorney's office is located or where the courthouse is situated.

Similarly, according to John Pucci's affidavit, ¶ 13,

> The fair hourly rate for adult entertainment cases appropriately should be considered on a state-wide basis, which would be higher than the rates in western Massachusetts, given the small number of attorneys who do such work.

Finally, according to Kenneth Tatarian's affidavit, ¶ 4,

> To the best of my knowledge, there are three attorneys in Massachusetts who

currently have an active practice litigating cases on behalf of clients engaged in adult entertainment businesses, and Thomas Lesser is one of them. I know that Attorney Lesser was lead counsel in D.H.L. Associates, Inc. v. O'Gorman, 199 F.3d 50 (1st Cir. 1999), and Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188 (2005), and that he has had substantial experience in other cases raising similar issues.

In addition, Showtime proved that it satisfied eight of the twelve factors set forth in Johnson v. Georgia Highway Express Inc., 480 F2d 714 (5th Cir 1974), factors which can be used to adjust the lodestar at the Court's discretion.[6] These included the fact that (1) the questions decided by this Court were both novel and difficult; (2) there was a high degree of skill needed to litigate the issues properly; (3) the result could not have been better; (4) Showtime's counsel has exceptional experience, skills and reputation in the field of civil rights litigation, and more particularly, adult entertainment; (5) adult entertainment cases are undesirable cases for an attorney to undertake; (6) the case required a large amount of time, time which had to be expended within relatively narrow time restraints and necessarily precluded other work; (7) the fees awarded in other complex civil rights actions in Massachusetts have often exceeded $400 an hour for counsel with comparable skills, reputation and experience to attorney Lesser and $250 an hour for experienced associates; and (8) counsel had no relationship with Showtime prior to this litigation.

In response, Mendon did not contest any of the Johnson factors, nor did it submit any affidavits suggesting that reliance on a state-wide adult entertainment litigation community was inappropriate.[7]

---

[6] Although Mendon claimed that Johnson is not the lodestar method, in the next sentence, Mendon then concedes "[the] Johnson factors duplicate the lodestar, Mendon's Opp. at 19.

[7] Attorney Keston's affidavit did not address the question of whether the nature of the case merited a higher hourly rate. Although he personally is an experienced constitutional litigator, his opinion dealt only with the rate that an experienced litigator would charge to litigate a generic

Mendon also claims that Showtime is limited in its hourly rate for hours spent prior to August 9, 2012, by the fact that it chose not to appeal an earlier District Court fees award of $300 per hour. But neither waiver nor issue preclusion is applicable to the fee petition. This Court is tasked with awarding fair compensation for the services rendered in this particular case. The earlier award was generated after Showtime prevailed on an extremely straightforward issue of pure law. It was not a complicated case of first impression that required particularized adult entertainment law expertise, as here. Nor should Showtime be penalized because counsel decided that an appeal of the earlier District Court fee award was not justified by the amount at stake, given the additional time that would have passed before an award would have been collected.

V.   DIFFERENTIATING BETWEEN CORE AND NONCORE WORK IS NOT APPROPRIATE.

In support of its argument that Mendon is entitled to a reduction for non-core work,[8] the plaintiff points to Brewster v Dukakis, 3 F.3d 488 (1st Cir. 1993), a case where the plaintiff was seeking an additional $30,000 in fees for monitoring an injunction over and above the $670,000 it had been awarded for litigating the case. There, this Court defined non-core work as "less demanding tasks, including letter writing and telephone conversations,"[9] and chose to exercise its discretion to differentiate "non-core" from "core" work. Id. at 492 n.4.

But this distinction has since been largely abandoned. As the court explained in Sys.

---

claim in Western Massachusetts.

[8] In an effort to avoid this distinction, Showtime has not requested that it be compensated for routine telephone calls with opposing counsel, motions to continue, or routine attorney-client communications.

[9] Aside from one hour of Lisa Kent's time, neither of those categories is at issue here.

Mgmt., Inc. v. Loiselle, 154 F. Supp. 2d 195, 209 (D. Mass. 2001):

> Courts in the First Circuit traditionally have tinkered extensively with the fees awarded in civil rights cases. Although the tinkering—especially the distinction between core and non-core time—originally was an effort to use the Model Code factors to determine a reasonable hourly rate, such tinkering now should be considered solely a function of discretion rather than a definition of what is reasonable. That is because the lodestar calculation presumably captures the balance of all the Model Code factors; additional tinkering merely serves to double count some factors.

Sys. Mgmt., Inc. v. Loiselle, 154 F. Supp. 2d 195, 209 (D. Mass. 2001).  See Dixon v. Int'l Bhd. of Police Officers, 434 F. Supp. 2d 73, 86 (D. Mass. 2006) ("The Court will continue not to recognize the distinction between 'core' versus 'non-core' work by establishing one reasonable rate to apply to the lodestar calculation.").

Mendon has nonetheless asked this Court to extend the definition of non-core work to travel time and time spent preparing the fee petition.  More particularly, it challenges (a) eight hours spent traveling to and from Boston and (b) 34.25 hours spent on the attorneys fee petition.

Neither expansion of the definition of non-core time is appropriate here.  Time spent traveling to and from court is part and parcel of attending a settlement conference or court hearing.  It should not be valued differently from time spent actually in the courtroom.  In a small firm, both are time lost from performing other tasks.

Nor should time spent preparing the fee petition, and memorandum in support of the fee petition, be valued at a reduced rate in this case.  Counsel was required to spend that time, including legal research, due to Mendon's strong opposition to its first fee petition.  The time spent preparing the fee petition is, in no way, similar to non-core time, such as writing a letter or to talking on the telephone.

## VI.   CONCLUSION

For the reasons set forth above, Showtime requests that the Court grant the relief requested

in Showtime's motion for fees and costs.

<div style="margin-left: 40%;">

Respectfully submitted,
The plaintiff,
Showtime Entertainment LLC
By its attorneys,

</div>

Dated: March 13, 2015                    /s/ *Thomas Lesser*
                                        _____
                                        Thomas Lesser, BBO No. 295000
                                        lesser@lnn-law.com
                                        Michael Aleo, BBO No. 672071
                                        aleo@lnn-law.com
                                        Lesser, Newman & Nasser, LLP
                                        39 Main Street
                                        Northampton, MA 01060
                                        (413) 584-7331


### CERTIFICATE OF SERVICE

I, Michael Aleo, hereby certify that on the 13th day of March 2015, the foregoing document was filed electronically and will be served electronically on defendant's counsel of record: registered ECF participant Robert S. Mangiaratti, Esq., Murphy, Hesse, Toomey & Lehane, LLP, Crown Colony Plaza, 300 Crown Plaza Drive, Suite 410, P.O. Box 9126, Quincy MA 02169-9126 rmangiaratti@mhtl.com.


<div style="margin-left: 40%;">/s/ *Michael Aleo*</div>

Document: 00116516520   Page: 1   Date Filed: 03/13/2015

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

_____
                                )
SHOWTIME ENTERTAINMENT LLC,     )       NO. 12-2121
                                )
      Plaintiff-Appellant,       )
                                )       SUPPLEMENTAL AFFIDAVIT
v.                              )       OF MICHAEL ALEO IN SUPPORT
                                )       OF PLAINTIFF-APPELLANT
TOWN OF MENDON, ET AL.          )       SHOWTIME'S MOTION FOR
                                )       ATTORNEYS FEES AND COSTS
      Defendants-Appellees       )
_____)


     I, Michael Aleo, swear under the pains and penalties of
perjury that the following is true to the best of my knowledge:

     1.   I represent the plaintiff, Showtime Entertainment LLC
("Showtime") in the above-captioned proceeding.

     2.   I submit this supplemental affidavit in response to
assertions that the Town of Mendon ("Mendon") made in its
Opposition to Showtime's Motion for Attorneys Fees and Costs.

     3.   The billing that I submitted as part of Showtime's fee
petition omits fees that were not relevant to Counts III-VI,
concerning the size, height, and hours of operation bylaws that
the Court struck down under the First Amendment.   I did not
include billing related to either the MCRA claims or to the
alcohol ban (Count VII), which this Court certified to the Supreme
Judicial Court.   The manner by which I kept contemporaneous
billing records made this easy, as I had identified in my billing
record the subject of the work performed, i.e., billing for work
performed drafting pleadings concerning the size and height

regulations at the District Court was identified as relating to "Second Motion for Summary Judgment" or "Counts III and IV." I did not bill for work relating to Counts I, II, or VII of the complaint.

4.    With one exception, discussed below, I did not submit billing for the dozens of telephone calls and email communications with my clients or for any of the many meetings where I discussed this case with co-counsel, Thomas Lesser. Nor did I bill for the telephone calls and email communications that I routinely had with opposing counsel. Additionally, I did not bill for motions to continue that I prepared and filed.

5.    Mendon asserts that "Showtime apparently made no effort to engage a paralegal for the cost-effective use of legal services." Mendon's Opp. at 7. In fact, Showtime's counsel was aided by a legal secretary, for whom no compensation has been requested. I worked directly with the firm's legal secretary who spent dozens of hours revising briefs based on edits that Thomas Lesser or I submitted to her. The legal secretary also assisted in preparing briefs for electronic filing. Conservatively, the legal secretary spent 30-40 hours working on matters that directly related to the legal issues underlying Showtime's fee petition. Although the legal secretary's work significantly reduced the amount of work that was expended by Showtime's associates, Showtime has not requested compensation for any of the legal secretary's time spent on this matter.

6.    Mendon asserts that the three hours that I spent preparing the Notice of Appeal was excessive.  Although the Notice of Appeal is a short document, I was cautious in preparing the document to ensure that it was prepared and submitted in a manner that was procedurally sound.  I reviewed the applicable rules, contacted the District Court by telephone, and then prepared and submitted the notice accordingly.

7.    Mendon next takes issue with the fact that Showtime's counsel spent more time reviewing Mendon's pleadings before the District Court than they spent reviewing Mendon's pleadings submitted to this Court.  Mendon's Opp. at 7.  However, Mendon's bylaws presented several issues of first impression.  The first opportunity that I had to consider Mendon's legal justification for its bylaws was when Mendon submitted its briefs to the District Court.  Further, with its filings, Mendon submitted hundreds of pages of articles that Mendon claimed justified its position.  Reviewing and understanding the legal arguments and factual justifications that Mendon put forth before the District Court took a significant amount of time and required review of the articles.

8.    Mendon next asserts that "Showtime has not excluded the hours expended litigating MCRA claims."  Mendon Opp. at 7.  However, I did not submit billing for my MCRA research or for the time spent drafting the portion of the briefs relating to the MCRA, which were largely based on excerpts from prior legal

briefs. Showtime referenced the MCRA in three separate pleadings, but each time, the reference was limited to a one paragraph footnote, footnotes that were virtually identical to one another.

9.    Finally, Mendon criticizes the hours that I expended relating to settlement discussions following the Court's mandated mediation session: "Showtime reported four hours for settlement discussions with opposing counsel and its own counsel on October 23 and 24, 2012." Mendon's Opp. at 11.    As explained below, this criticism must have been made in error.

10.    On October 22, 2012, the parties and their counsel attended a mandatory settlement conference with Judge King.    We engaged in lengthy and fruitful conversations, which resulted in the parties reaching settlement terms, subject to approval by Mendon's Board of Selectmen, with respect to each of the bylaws that this Court struck down under the First Amendment. Unfortunately, the next morning, October 23, 20112, counsel for Mendon informed me via email that it appeared that Mendon would not in fact honor the agreement that the parties had reached the previous day during mediation.    Needless to say, I engaged in extensive discussions with Attorney Lesser and with my clients, who were very disappointed.    The following day, October 24, 2012, I discovered that someone other than my clients had contacted members of the local press, disclosing the fact that a settlement proposal had been tentatively reached, but that Mendon would not agree to it.    Accordingly, I had further discussions on that day

with my clients and Attorney Lesser.  I also communicated further

with Mendon's counsel, apprising him of these developments.


Dated: March 13, 2015          /s/ Michael Aleo

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

_____
                                )
SHOWTIME ENTERTAINMENT LLC,     )    NO. 12-2121
                                )
     Plaintiff-Appellant,        )
                                )    SUPPLEMENTAL AFFIDAVIT
v.                              )    OF THOMAS LESSER IN SUPPORT
                                )    OF PLAINTIFF-APPELLANT
TOWN OF MENDON, ET AL.          )    SHOWTIME'S MOTION FOR
                                )    ATTORNEYS FEES AND COSTS
     Defendants-Appellees        )
_____)


I, Thomas Lesser, swear under the pains and penalties of perjury that the following is true to the best of my knowledge:

1.   I represent the plaintiff, Showtime Entertainment LLC ("Showtime") in the above-captioned proceeding.

2.   I submit this supplemental affidavit in response to assertions that the Town of Mendon ("Mendon") made in its Opposition to Showtime's Motion for Attorneys Fees and Costs.

3.   The billing included in Showtime's motion for attorneys fees and costs does not include time spent litigating claims other than those that this Court ruled upon in its order dated October 9, 2014.  The contemporaneous records that the firm kept documented the specific Counts associated with that work.  The billing records were organized in this fashion in part based on the possibility that Showtime might prevail on some, but not all, of its counts, and we would then have to allocate the time between the Counts.  The fee request here omitted time spent on Counts other than III-VI.

1

4.    Mendon refers to time that Lisa Kent spent preparing memoranda relating to the evidence that Mendon produced. Ms. Kent listened to and viewed hours of tapes of Mendon municipal meetings, and read and analyzed over 1,000 pages of documents produced by Mendon, first pursuant to a public records request and then pursuant to discovery requests.  In the course of doing so, she wrote four memoranda summarizing the evidence.  Ms. Kent's first memorandum set forth the pre-enactment history of the zoning bylaws.  With exhibits, it was 34 pages long.  The second memorandum outlined the evidence studies presented at the October 7, 2008 special town meeting.  With exhibits, that memorandum it was 47 pages.  The third memorandum analyzed (a) an opinion of Town Counsel that concluded that all three bylaws, which are the subject of this fee petition, served a substantial governmental interest and were narrowly tailored, (b) studies relied on by Mendon, (c) municipal board meeting notes, and (d) listed items not provided as of that date by Mendon's discovery. It was nine pages long with 62 pages of exhibits.  The fourth memorandum summarized Ms. Kent's further review of discovery documents produced during discovery.  With exhibits, it was 30 pages long.


Dated: March 13, 2015          */s/ Thomas Lesser*

2

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

```
_____
                                   )
SHOWTIME ENTERTAINMENT LLC,        )      NO. 12-2121
                                   )
      Plaintiff-Appellant,         )
                                   )      PLAINTIFF-APPELLANT SHOWTIME'S
v.                                 )      SUPPLEMENTAL MOTION FOR
                                   )      ATTORNEYS FEES AND COSTS
TOWN OF MENDON, ET AL.             )
                                   )
      Defendants-Appellees         )
_____)
```

Now comes the plaintiff-appellant, Showtime Entertainment LLC, ("Showtime"), and moves this Court to award Showtime attorney fees for the time that its attorneys expended in replying to the Town of Mendon's ("Mendon") opposition to Showtime's original motion for fees and costs, as well as for the time expended preparing this motion.

Following this Court's decision in Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61 (1st Cir. 2014), Showtime filed a motion and memorandum pursuant to the First Circuit Court of Appeals Local Rule 39.1(b) and 42 U.S.C. § 1988, requesting an award of attorney fees and costs incurred in litigating counts III through VI of Showtime's complaint. Mendon filed a 20 page opposition to Showtime's motion, alleging that the fees that Showtime requested were excessive, duplicative, and unnecessary. Showtime responded by filing a 10 page reply to Mendon's opposition. Showtime incorporates the arguments included in these memoranda herein.

1

Pursuant to 42 U.S.C. § 1988, a prevailing party in a 42 U.S.C. § 1983 action is ordinarily entitled to an award of reasonable attorney fees and costs, absent special circumstances rendering such an award unjust. <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983). See 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title...the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.").

A prevailing party is allowed to recover fees for time that its counsel expended replying to an opposition that the opposing party filed to its motion for fees and costs. See <u>Ginest v. Bd. of Cnty. Comm'rs of Carbon Cnty., WY</u>, 423 F. Supp. 2d 1237, 1241-42 (D. Wyo. 2006) ("[P]laintiffs are entitled to recover attorney's fees for time spent pursuing their fee claim, as well as for time spent by plaintiffs' counsel in preparing his reply brief."). See also <u>Anderson v. Long Beach City</u>, 81 F. App'x 703, 707 (9th Cir. 2003).

Showtime's counsel spent a total of 27.65 hours preparing the reply brief and this supplemental motion. Calculation of those hours was based on contemporaneous billing records kept by Attorneys Lesser and Aleo, respectively, and is detailed in their attached affidavits.

Based on Showtime's request for fees of $400 an hour for Thomas Lesser and $250 an hour for Michael Aleo, the total supplemental fees sought are $ 8,960.

Respectfully submitted,
The plaintiff,
Showtime Entertainment LLC
By its attorneys,

Dated: March 13, 2015          /s/ *Thomas Lesser*
_____
Thomas Lesser, BBO No. 295000
lesser@lnn-law.com
Michael Aleo, BBO No. 672071
aleo@lnn-law.com
Lesser, Newman & Nasser, LLP
39 Main Street
Northampton, MA 01060
(413)584-7331


### CERTIFICATE OF SERVICE

I, Thomas Lesser, hereby certify that on March 13, 2015, the foregoing document was filed electronically and will be served electronically on defendants' counsel of record: registered ECF participant Robert S. Mangiaratti, Esq., Murphy, Hesse, Toomey & Lehane, LLP, Crown Colony Plaza, 300 Crown Plaza Drive, Suite 410, P.O. Box 9126, Quincy MA 02169-9126 rmangiaratti@mhtl.com.


_/s/ *Thomas Lesser* __

3

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

```
_____
                                 )
SHOWTIME ENTERTAINMENT LLC,      )     NO. 12-2121
                                 )
      Plaintiff-Appellant,       )
                                 )     AFFIDAVIT OF THOMAS LESSER
v.                               )     IN SUPPORT OF
                                 )     PLAINTIFF-APPELLANT
TOWN OF MENDON, ET AL.           )     SHOWTIME'S SUPPLEMENTAL
                                 )     MOTION FOR FEES AND COSTS
      Defendants-Appellees       )
_____  )
```

I, Thomas Lesser, swear under the pains and penalties of perjury that the facts set forth in Showtime Entertainment LLC's supplemental motion for attorney fees and costs, as well as in this affidavit, are accurate to the best of my knowledge.

1.   I am the lead attorney for the plaintiff Showtime Entertainment LLC ("Showtime") in the above-entitled matter.

2.   I am currently assisted in this litigation by my associate, Michael Aleo.

3.   The hours set forth below detail the time that the two of us spent preparing (1) the reply that we filed in response to Mendon's opposition to Showtime's motion for attorneys fees and costs and (2) the supplemental motion for fees.  The hours documented below are based on contemporaneous time records detailing the scope of the work done.

4.   The hours that Attorney Aleo and I expended are as follows:

1

a.    Time of Michael Aleo

3/6/2015    Review Mendon's opposition to motion
            for fees; discuss with Attorney
            Lesser                                        .75

3/9/2015    Further review Mendon's opposition to
            motion for fees; review billing
            records; print and read cases
            referenced in Mendon's opposition;
            draft affidavit                               2.75

3/10/2015   Review and revise reply brief; draft
            supplemental motion for fees
                                                          3

3/11/2015   Revise reply brief; research case law
            regarding core vs. non-core time             2

3/12/2015   Revise reply and supplemental motion
            for fees                                      3

3/13/2015   Revise, finalize, and file reply and
            supplemental motion for fees                 2.5


                                    Total hours      14



b.    Time of Thomas Lesser


3/6/2015    Review Mendon's opposition to motion
            for fees and related case law                2

            Discuss same with attorney Aleo              .15

3/7/2015    Preparation of reply memorandum;
            review case law                               3

3/8/2015    Preparation of reply memorandum;
            review case law                               3

3/9/2015    Revise reply memorandum                       2



                              2

| | | |
|---|---|---|
| 3/10/2015 | Revise reply memorandum | 1.5 |
| 3/13/2015 | Revise reply memorandum; review and revise affidavits | 2 |

Total hours   13.65

5.    As explained in Showtime's initial motion for fees, I have requested a rate of $400 per hour, which is consistent with the fees charged by attorneys who litigate adult entertainment claims in Massachusetts.  My normal hourly rate is $350 per hour. Additionally, my associate, Michael Aleo, bills at a normal hourly rate of $250 per hour.

6.    The total fees by each attorney on this litigation are as follows:

(a)  Thomas Lesser, 13.65 hours.   At a rate of $400 per hour, the fee awarded would be $ 5,460.

(b)  Michael Aleo, 14 hours.   At a rate of $250 per hour, the fee awarded would be $3,500.


DATE: March 13, 2015                    /s/ Thomas Lesser        _

3

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

_____
)
SHOWTIME ENTERTAINMENT LLC,  )      NO. 12-2121
)
    Plaintiff-Appellant,  )
)      AFFIDAVIT OF MICHAEL ALEO
v.                           )      IN SUPPORT OF
)      PLAINTIFF-APPELLANT
TOWN OF MENDON, ET AL.       )      SHOWTIME'S SUPPLEMENTAL
)      MOTION FOR FEES AND COSTS
    Defendants-Appellees   )
_____ )

I, Michael Aleo, swear under the pains and penalties of perjury that the following is accurate to the best of my knowledge.

1.  I am counsel for the plaintiff-appellant Showtime Entertainment LLC ("Showtime") in the above-entitled matter.

2.  The documentation of the hours set forth in the affidavit of Thomas Lesser concerning the time that I expended preparing (1) Showtime's reply to Mendon's opposition to Showtime's motion for fees and (2) this supplemental motion for attorney fees are accurate and are based on contemporaneous time records that I have kept which detail the work that I have performed.


DATE: March 13, 2015              /s/ Michael Aleo          _

1