UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                )
SHOWTIME ENTERTAINMENT LLC,    )
                                                                )
            Plaintiff,                                      )
                                                                )         Civil Action No.
      v.                                                     )         10-40194-FDS
                                                                )
MIKE AMMENDOLIA, in his official,        )
capacity, LAWNEY TINIO, in his official )
capacity, and the TOWN OF MENDON,    )
                                                                )
            Defendants.                                  )
_____)


MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTIONS FOR ATTORNEYS' FEES AND COSTS

SAYLOR, J.

        This action arises from the efforts of plaintiff Showtime Entertainment LLC to open a

club in Mendon, Massachusetts, that will feature live nude dancing.  In 2010, Showtime brought

an action against the Town of Mendon and its representatives challenging the constitutionality of

four provisions of the town's bylaws under the First Amendment and Article 16 of the

Massachusetts Declaration of Rights.  Those four provisions included a special-permit

requirement (Counts One and Two), a size restriction (Counts Three and Four), an hours

restriction (Counts Five and Six), and an alcohol restriction (Count Seven).[1]

        In 2012, the Court granted Showtime's motion for summary judgment on Counts One

and Two and awarded it $24,404.56 in attorneys' fees pursuant to 42 U.S.C. § 1988.  However, it

granted defendants' motion for summary judgment on Counts Three through Seven.  Showtime

_____
        [1] Showtime challenged the alcohol restriction under Article 16, but not the First Amendment.

then appealed to the First Circuit.  On appeal, the First Circuit reversed and remanded, ordering

that summary judgment be granted in favor of Showtime on Counts Three through Six.

Showtime moved for an award of attorneys' fees before the First Circuit, but pursuant to First

Circuit Local Rule 39.1(b) the panel remitted to this Court Showtime's motion and supplemental

motion.

As a prevailing party on Counts Three through Six, Showtime requests a total award of

$193,880 in fees for its three attorneys and $1,339.27 in costs.[2]  For the reasons set forth below,

the motions will be granted in part and denied in part, and the Court will award Showtime

attorneys' fees in the amount of $138,417.71 for 526.6 hours, and costs in the amount requested.

## I.    Background

The underlying facts of the dispute are familiar to the parties and are detailed in four

earlier opinions.  First, the Court granted Showtime's motion for summary judgment on Counts

One and Two, its First Amendment challenges to Mendon's special-permit requirement for

adult-entertainment establishments.  *See Showtime Entm't LLC v. Ammendolia*, 885 F. Supp. 2d

479 (D. Mass. 2012).  The Court awarded Showtime $24,404.56 in attorneys' fees as a prevailing

party.  Second, the Court granted defendants' motion for summary judgment on Counts Three

through Seven, Showtime's challenges to Mendon's size, hour, and alcohol restrictions on adult-

entertainment establishments.  *See Showtime Entm't LLC v. Ammendolia*, 885 F. Supp. 2d 507

(D. Mass. 2012).   Third, in reversing this Court, the First Circuit ordered that summary

judgment be entered for Showtime on Counts Three through Six, and it certified two questions

---

[2] In its original motion, Showtime requests $181,080 in attorneys' fees for 592.77 hours, and $1,303.27 in costs.  In a supplemental motion, Showtime requests an additional $8,960 for 27.65 hours that its attorneys spent drafting, editing, and submitting a reply brief to defendants' opposition to the original motion.  In a second supplemental motion, Showtime requests an additional $3,840 for 9.6 hours litigating its fee petition and $36 in costs.

relating to Count Seven to the Massachusetts Supreme Judicial Court.  *See Showtime Entm't LLC v. Town of Mendon*, 769 F.3d 61 (1st Cir. 2014).  Fourth, the SJC answered the certified questions by concluding that while Mendon had established a sufficient countervailing state interest to support its alcohol restriction, it was not narrowly tailored and therefore violated Article 16.  *See Showtime Entm't LLC v. Town of Mendon*, 472 Mass. 102 (2015).

On February 4, 2015, Showtime moved for an award of attorneys' fees and costs that it incurred in litigating and appealing Counts Three through Six.  After defendants filed an opposition contesting the requested award, Showtime filed a reply as well as a supplemental motion for fees that it incurred in drafting the reply.  On January 20, 2016, the First Circuit remanded the matter to this Court for a reasonable fee determination.

In addition to holding a hearing on the motions, the Court has carefully considered the following filings:

- Showtime's motion for attorneys' fees and costs; its memorandum in support of that motion; affidavits by Showtime's attorneys, Thomas Lesser, Michael Aleo, and Lisa Kent, that detail their qualifications and summarize their hourly billing records; and three supporting affidavits by other Massachusetts attorneys;

- Defendants' opposition to Showtime's motion; an exhibit that details their objections to Showtime's hourly billing records; an affidavit by defendants' attorney; and two affidavits by other Massachusetts attorneys;

- Showtime's reply memorandum to defendants' opposition; two supplemental affidavits by its attorneys; a supplemental motion for attorneys' fees and costs that it incurred in replying to defendants' opposition; and an affidavit by Attorney Lesser that details the hourly records in support of the supplemental motion;

- Defendants' opposition to Showtime's supplemental motion;

- Showtime's second supplemental motion for attorneys' fees and costs that it incurred in attending a hearing on its motions; and

- Defendants' opposition to Showtime's second supplemental motion.

## II.    **Standard of Review**

In § 1983 cases, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001).

Here, there is no dispute that Showtime is a prevailing party on Counts Three through Six. Accordingly, the sole issue is what amount of attorneys' fees and costs is reasonable for litigating and appealing those claims. Under the § 1988 fee-shifting provision, a district court has "broad" discretion to determine what reasonable fees and costs should be awarded. *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir. 1988). The prevailing party has the burden of substantiating the requested fees and costs with detailed billing records and hourly rates. *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). A district court need not accept the hours and rates offered by the prevailing party. Indeed, the attorneys' records should be "scrutinized with care." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984).

## III.    **Analysis**

In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *see also Spooner*, 644 F.3d at 67-69. The lodestar method involves "multiplying

the number of hours productively spent by a reasonable hourly rate to calculate a base figure."
*Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*,
461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably
expended by the attorneys for the prevailing party, excluding those hours that are "excessive,
redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Grendel's Den*, 749
F.2d at 950 (explaining that a court should subtract "hours which [are] duplicative, unproductive,
excessive, or otherwise unnecessary"). "The court has a right—indeed, a duty— to see whether
counsel substantially exceeded the bounds of reasonable effort." *Metropolitan Dist. Comm'n*,
847 F.2d at 17 (internal quotation omitted); *see also Dixon v. International Bhd. of Police
Officers*, 434 F. Supp. 2d 73, 81-82 (D. Mass. 2006) (reducing an award in part because an
average of 32.8 hours drafting a summary judgment motion was excessive). Further, a court may
disallow or discount requests where the records are "too generic and, thus, insufficient as a
practical matter to permit a court to answer questions about excessiveness, redundancy, and the
like." *Torres-Rivera*, 524 F.3d at 336.

After determining the number of hours reasonably expended, a court's second step in
calculating the lodestar requires a determination of a reasonable hourly rate—a determination
that is benchmarked to the "prevailing rates in the community" for lawyers of like
"qualifications, experience, and specialized competence." *See Gay Officers Action League*, 247
F.3d at 295. In determining a reasonable hourly rate, a court must consider "the type of work
performed, who performed it, the expertise that it required, and when it was undertaken."
*Grendel's Den*, 749 F.2d at 950-51 (declining to define the "relevant community" for the hourly
rate of a well-known Harvard Law School professor as one "embracing a small group of

nationally prominent constitutional law scholars" and instead "confin[ing] [the] evaluation to the Boston market"). It is well-established that the moving party bears the burden of establishing an attorney's level of skill and experience, and when a party fails to provide documentation as to the attorney's qualifications, a court may reduce the hourly rate. *See, e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 142 (D. Mass. 2003).

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors. *Spooner*, 644 F.3d at 68. Those factors include (1) "a plaintiff's success claim by claim"; (2) "the relief actually achieved"; and (3) "the societal importance of the right which has been vindicated." *Coutin v. Young & Rubicam P.R.*, 124 F.3d 331, 338 (1st Cir. 1997).

"A request for attorney[s'] fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437 (noting that "[i]deally, of course, litigants will settle the amount of a fee"). Unfortunately, that appears to be what has transpired, at least in part, in this case. In response to Showtime's lengthy motion for attorneys' fees, defendants filed an equally-lengthy opposition, including eighteen distinct categories of objections. In further response, Showtime filed a reply brief as well as two supplemental motions for attorneys' fees that it incurred in responding to defendants' opposition.

In response to litigants' propensity to turn fee requests into a second round of litigation, the First Circuit has indicated that district courts are not required to engage in a minutely detailed analysis of fee requests. *See Metropolitan Dist. Comm'n*, 847 F.2d at 16 ("Consistent with this flexible paradigm, we perceive no need for the district court to drown in a rising tide of fee-generated minutiae . . . [and] a judge [should not] become so deluged with details that he is

unable to view the claims for fees in perspective.") (internal quotation marks omitted)).  The
court has explained:

> Although there is some burden on the district court to explain why it makes a
> substantial adjustment, up or down, of a diary-supported bill, we have never
> required that district courts set forth hour-by-hour analyses of fee requests.  What
> we expect the trial court to do is make concrete findings, supply a clear
> explanation of its reasons for the fee award, and most of all, retain a sense of
> overall proportion.  In certain cases, these objectives may be better met by
> concentrating on what was necessary to be accomplished rather than on a welter
> of time sheets.

*Id.* (citations, alterations, and internal quotation marks omitted).

Accordingly, in calculating the lodestar, the Court will attempt to summarize the parties'
three primary disputes without losing a sense of the overall proportion of Showtime's fee
request.  Those three disputed issues are (1) whether the hours expended by Showtime's
attorneys are, as defendants contend, excessive, duplicative, and vague, (2) whether the
appropriate hourly rate for Showtime's lead counsel, Attorney Lesser, should be based on the
statewide adult-entertainment legal community or the relevant geographic community, and
(3) whether Showtime's attorneys should receive a lower rate for time spent on "non-core" tasks.

The fees and costs requested by Showtime are summarized in the table below.

| Requested Fees by Showtime | | | |
|---|---|---|---|
| Lawyer | Hours | Hourly Rate ($) | Total Fee Billed ($) |
| *Original Motion (Excluding Fee Petition)* | | | |
| Thomas Lesser | 202.75 | 400 | 81,100.00 |
| Michael Aleo | 302.85 | 250 | 75,712.50 |
| Lisa Kent | 52.77 | 250 | 13,192.50 |
| **Total** | **558.37** | **-** $ | **170,005.00** |
| *Fee Petition (Original and Two Supplemental Motions)* | | | |
| Thomas Lesser | 40.00 | 400 | 16,000.00 |
| Michael Aleo | 31.50 | 250 | 7,875.00 |
| Lisa Kent | - | - | - |
| **Total** | **71.50** | **-** $ | **23,875.00** |
| **Total Hours and Fees** | **629.87** | $ | **193,880.00** |
| Costs | | | 1,339.27 |
| **Total Request** | | $ | **195,219.27** |

Although defendants raise eighteen separate objections to Showtime's requested fees, they conclude their opposition by asking the Court to make three wholesale adjustments: (1) reduce all hours by at least thirty percent; (2) compensate Attorney Lesser at a $300 hourly rate and his associates a $200 hourly rate; and (3) separate hours spent on core legal work from non-core clerical work, and compensate non-core hours at two-thirds the rate for core hours. Based on the Court's calculations, those three adjustments would produce a fee award summarized in the below table.[3]

| Suggested Fees by Defendants | | | |
|---|---|---|---|
| Lawyer | Hours | Hourly Rate ($) | Total Fee Billed ($) |
| *Original Motion (Excluding Fee Petition; 30% Reduction)* | | | |
| Thomas Lesser | 141.93 | 300 | 42,577.50 |
| Michael Aleo | 212.00 | 200 | 42,399.00 |
| Lisa Kent | 36.94 | 200 | 7,387.80 |
| **Total** | **390.86** | **-** | **$   92,364.30** |
| *Fee Petition (30% Reduction)* | | | |
| Thomas Lesser | 28.00 | 200 | 5,600.00 |
| Michael Aleo | 22.05 | 133 | 2,940.00 |
| Lisa Kent | - | - | - |
| **Total** | **50.05** | **-** | **$     8,540.00** |
| **Total Hours and Fees** | **440.91** | | **$ 100,904.30** |
| Costs | | | 1,339.27 |
| **Total Request** | | | **$ 102,243.57** |

## A.      Hours Reasonably Expended

Showtime contends that its attorneys should be compensated for 629.9 hours spent litigating Counts Three through Six—from the complaint, through discovery, summary judgment, the appeal to the First Circuit, and its fee petition.  In support of that request,

---

[3] The defendants do not identify a specific number of hours that they believe are non-core.  However, in their various oppositions, they repeatedly contend that the 71.5 hours (50.05 hours with a 30% reduction) that Showtime's attorneys spent preparing and litigating the fee petition, at the very least, should be considered non-core.

Showtime's attorneys have submitted affidavits summarizing their contemporaneously-recorded hours instead of their actual billing records.  It does not appear that they recorded their hours in normal tenths-of-an-hour increments.

Defendants contend that the documented hours are excessive, duplicative, and vague. Before addressing Attorney Kent's hours, the Court will address the hours of Attorneys Lesser and Aleo together because their billing records indicate that they spent much of their time researching, drafting, and editing the same motions and briefs.

### 1.     Attorneys Lesser and Aleo

Showtime requests that its lead counsel, Attorney Lesser, be compensated for 242.8 hours.  It also requests that Attorney Lesser's associate, Michael Aleo, be compensated for 334.4 hours.  The overwhelming majority of Attorney Lesser's hours were spent reviewing, revising, and rewriting Showtime's second and third motions for summary judgment and its appellate briefs.  The overwhelming majority of Attorney Aleo's hours were spent drafting the same documents, which the Court will assume included legal research.

Defendants contend that both attorneys' hours are excessive and should be reduced by at least 30 percent.  Showtime contends that the hours reflect the complexity of the First Amendment issues and that the approximate 2-to-1 ratio of hours-to-pages written is reasonable.

Certainly, both attorneys' hours are high, although perhaps not as egregiously high as defendants' suggest.  Just to highlight a few examples, Attorney Aleo spent 73.1 hours, in 10 time entries, drafting the 20-page memorandum in support of Showtime's second motion for summary judgment and the 16-page memorandum in support of its third motion for summary judgment.  Attorney Lesser then spent 33 hours, in 5 time entries, reviewing and revising those summary judgment pleadings.  Even if those hours do not appear particularly excessive at first

glance, the Court must consider that Showtime's second and third summary judgment motions involved similar issues.  For example, Mendon's size restriction and hour restriction involved very similar underlying facts and legislative history.  Furthermore, both restrictions involved similar First Amendment issues, such as whether there was a meaningful distinction between a facial challenge and an as-applied challenge, and whether the appropriate level of scrutiny was strict or intermediate.  The First Circuit's opinion demonstrates that overlap in factual and legal issues; the court grouped the two restrictions together as "zoning bylaws" and addressed them largely together in the same analysis section.  *See Showtime*, 769 F.3d at 70-78.

Once defendants filed their oppositions to Showtime's motions, Attorney Aleo spent 71.25 hours reviewing them and drafting two 20-page reply briefs, and Attorney Lesser spent 33 hours reviewing and revising those briefs.  Furthermore, after defendants filed sur-replies, Attorneys Lesser and Aleo spent 12.5 hours reviewing those sur-replies and 17.5 hours drafting a response.  All told, excluding discovery-related hours, Attorneys Aleo and Lesser spent 160.9 and 79.5 hours, respectively, on Showtime's summary-judgment pleadings challenging the zoning bylaws.

On appeal, the hours recorded by Attorneys Lesser and Aleo also appear high.  Attorney Aleo spent 3 hours drafting and filing the notice of appeal.  He then spent 77.25 hours drafting the appeal brief, 36.5 hours drafting the reply brief, and 9 hours preparing for the appeal hearing, during which he did not argue.  Attorney Lesser spent 52 hours reviewing and revising Aleo's draft of the appeal brief and 26.5 hours doing the same for the reply brief.  Even if those hours do not initially appear unreasonable for an appellate brief on complex constitutional issues, the Court must consider the fact that the parties' legal arguments before the First Circuit were not substantially different from those presented at the summary-judgment stage.  *See Grendel's Den*,

749 F.2d at 954 (reducing an appellate fee request, in part, because the appellate lawyers "covered the same ground in arguments in the district court").  Furthermore, despite Showtime's success on appeal, the Court notes that that "just as a criminal defendant is entitled to a fair trial and not a perfect one, a litigant is entitled to attorney's fees under 42 U.S.C. § 1988 for an effective and completely competitive representation but not one of supererogation."  *Id.* at 953-54.  Finally, after prevailing before the First Circuit, Attorneys Aleo and Lesser combined to spend 71.5 hours on their fee petition, an "exercise [that] often amounts to little more than 'documenting what a lawyer did and why he or she did it.'"  *Brewster v. Dukakis*, 3 F.3d 488, 494 (1st Cir. 1993) (quoting *Gabriele v. Southworth*, 712 F.2d 1505, 1507 (1st Cir. 1983)).

Accordingly, after careful consideration of the hourly records and defendants' objections, the Court will reduce Attorney Lesser's hours by 10 percent and Attorney Aleo's hours by 15 percent as excessive under the circumstances.

Defendants also contend that the hours of Attorneys Lesser and Aleo should be further reduced because they are duplicative.  To provide just one example, Attorney Lesser spent nearly as much time reviewing and revising Showtime's reply brief on appeal (26.5 hours) as Attorney Aleo did researching and drafting the reply brief in the first place (36.5 hours).  Obviously, some natural duplication is inevitable in dividing legal work, such as having an associate conduct legal research and outline or draft a brief for a senior attorney to review and revise or rewrite.  Yet such divisions also provide clients with obvious benefits, such as a more thorough work product.  Nevertheless, when a senior attorney spends almost as much time revising or rewriting an associate's draft, a client—or in this case, the Court—should begin to question the efficiency of the attorneys.

Furthermore, to the extent that the hours of Attorneys Lesser and Aleo were not at least partly duplicative, the vagueness of their time entries imposes a burden on the Court to determine what specific tasks they performed and how efficiently they performed them.  Their hours, at least as documented in the affidavits provided to the Court, are almost entirely entered on a once-per-day basis, and those entries usually have generic descriptions, such as "draft memorandum for summary judgment" (for 8 hours), "review and revise draft summary judgment pleadings" (for 10 hours), "draft brief for First Circuit" (for 6.5 hours), and "revise brief" (for 8 hours).  The Court also cannot ignore the fact that Showtime's attorneys failed to record their time by the tenth of the hour, which is a widely accepted practice from large firms to solo practitioners.  *See Fluor Intercontinental, Inc. v. IAP Worldwide Svcs., Inc.*, 553 F. App'x 912, 916 (11th Cir. 2013) (noting that fee awards may be reduced for failure to submit bills in tenth-of-the-hour increments); *Harley v. Nesby*, 2012 WL 1537881, at *13 (S.D.N.Y. May 2, 2012) (reducing hours by 10 percent for use of block billing instead of billing by tenth of hour).

To be clear, courts reviewing § 1988 fee petitions do not require attorneys to account for every second of their day.  However, a certain degree of detail is necessary to allow careful review by opposing parties and judges.  Counsel who undertake such work surely know that their fee petitions are likely to be scrutinized by the courts, and should act accordingly.

In short, as the parties are well aware, clients in the current legal environment scrupulously review attorneys' billing records for inefficiencies, inflated hours, and vague time entries.  There appears to be no reason why prevailing parties who seek attorneys' fees under § 1988 should not be held to a standard that at least approaches the detail required by ordinary clients.  Accordingly, the Court will further reduce each attorney's hours by 5 percent.

Therefore, in total, Attorney Lesser's 242.8 hours will be reduced by 15 percent to 206.3 hours, and Attorney Aleo's 334.4 hours will be reduced by 20 percent to 267.5 hours.

2.      **Attorney Kent**

Showtime requests that Attorney Lesser's other associate, Attorney Kent, be compensated for a total of 52.8 hours.  Attorney Kent spent the majority of her recorded hours reviewing Mendon's asserted pre-enactment evidence of negative secondary effects caused by adult entertainment.  She watched videos of town-hall meetings, reviewed documents, and then drafted a series of memoranda to Attorney Lesser in order to summarize the town's justifications for establishing the zoning bylaws.

Defendants contend that Attorney Kent's hours are not only excessive, but also duplicative with Attorney Lesser's hours spent reviewing the same evidence.  However, Attorney Kent's hours appear to be reasonable.  To begin, her primary task in this case was very important to Showtime's core argument:  that the town's zoning bylaws could not survive strict or even intermediate scrutiny because its stated justifications—maintaining rural aesthetics and avoiding traffic congestion—were "tellingly underinclusive."  *Showtime*, 769 F.3d at 78.  It appears that she reviewed thousands of pages of documents, both from public-records requests and through party discovery, and summarized her conclusions in her memoranda.  Furthermore, it appears that her work was not duplicative; rather, her efforts saved Attorney Lesser significant time, as he was able to spend just 12 hours reviewing her memoranda and the most important documents that she had identified.  Finally, Attorney Kent's total hours and individual time entries do not appear excessive or vague.  Her 52.8 hours constitute roughly one week's worth of work, and her time entries are predominantly less than two hours and contain specific task descriptions.  Accordingly, Attorney Kent's 52.8 hours appear to be reasonable and do not require adjustment.

13

In sum, the Court will reduce the hours of Showtime's attorneys to 526.6 hours, which is less than their requested 629.9 hours but more than defendants' suggested 440.9 hours.

### B.        Reasonable Hourly Rates

Showtime contends that its lead counsel Thomas Lesser should be compensated at a $400 hourly rate and that his two associates Michael Aleo and Lisa Kent should be compensated at a $250 hourly rate.  It contends that those rates are justified because adult-entertainment civil rights litigation is a state-wide market and because the First Amendment issues were particularly complex.  Defendants contend that Attorneys Lesser and his two associates, who practice in Northampton, Massachusetts, should be awarded rates of $300 and $200, respectively.

While each party submitted multiple affidavits in support of its position, each also makes significant concessions.  To begin with Showtime, even though Attorney Lesser requests a $400 hourly fee for this case, he concedes that he normally charges his clients a $350 hourly rate.  Furthermore, two of the three affidavits that Showtime submitted from outside attorneys conclude that even though $350 per hour may fall near the lower end of hourly rates for adult-entertainment civil rights lawyers state-wide, such a rate is reasonable for attorneys practicing in western Massachusetts.[4]  Turning to defendants' concessions, even though they urge the Court to award Attorney Lesser the same $300 hourly rate that it did when Showtime prevailed at the summary-judgment stage on Counts One and Two, one of their two affidavits from an outside attorney acknowledges that an hourly rate of $350 is reasonable for an attorney with "the impeccable credentials of Thomas Lesser."

---

[4] In its briefs and supporting affidavits, Showtime appears to concede that the relevant geographic community is western Massachusetts.  Attorney Lesser's offices are located in Northampton, in western Massachusetts, but the lawsuit was filed in Worcester, in central Massachusetts.  Arguably, the Court could use the location where the lawsuit was filed as the relevant geographic community instead of the location where the attorneys practice.  Nonetheless, there appears to be no caselaw in the First Circuit noting this distinction, and the distinction that appears to be more relevant to this case is the difference between rates in the metropolitan Boston area and rates in the rest of the Commonwealth.

After consideration of Attorney Lesser's qualifications, the Court declines to apply a state-wide rate for adult-entertainment civil rights lawyers and will instead award him an hourly rate of $350.  Reasonable hourly rates are benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *Gay Officers Action League*, 247 F.3d at 295.  Certainly, one aspect of the relevant community analysis is to determine the market rate for attorneys with qualifications and experience similar to those of Attorney Lesser.  However, that is not the only relevant factor.  Determining the "prevailing rates in the community," by definition, requires courts to consider *where* the community is geographically located because, put simply, lawyers and law firms—like any other business—have expenses.  And it is more expensive to live, rent office space, and pay junior lawyers in a metropolitan area like Boston than in western, or even central, Massachusetts.  Accordingly, one would expect a Boston lawyer who had the same exact qualifications and experience as Attorney Lesser to charge a higher hourly rate to offset her higher expenses.

Nevertheless, the Court will not award Attorney Lesser the same $300 hourly rate that it did when Showtime prevailed on Counts One and Two in 2012, nearly four years ago.  Accordingly, Attorney Lesser will be compensated at an hourly rate of $350.

After careful consideration and review of the qualifications of Attorneys Aleo and Kent, the Court will award them an hourly rate of $225.

## C.   Core Versus Non-Core Hours

The final remaining issue necessary to calculate the lodestar is whether the attorneys' hourly rates should be reduced for time they spent on non-core work.  Showtime contends that the Court should not distinguish core legal work from non-core administrative work.  Defendants contend that the Court should follow the distinction that it made between core and non-core work

15

in awarding attorneys' fees on Counts One and Two in 2012, and compensate hours allotted to non-core work at two-thirds the hourly rate for core work.

A court determining a fee award may distinguish between "core" and "non-core" legal work "to prevent attorneys from earning their regular lawyers' fees for work that could be performed by a less skilled employee." *Stokes v. Saga Int'l Holidays, Ltd.*, 376 F. Supp. 2d 86, 95 (D. Mass. 2005).  Core work includes "legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders." *Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993).  Non-core work includes simple or administrative tasks such as letter writing and telephone conversations.  *Id.*

Courts in this district appear to be split whether such a distinction should be made in calculating the lodestar.  Some courts have held that they "no longer recognize[] such a distinction." *Marrotta v. Suffolk Cnty.*, 726 F. Supp. 2d 1, 5 (D. Mass. 2010).  In doing so, they have reasoned "that once the appropriate hourly rate and number of hours reasonably expended are determined, the lodestar calculation will yield a presumptively correct result and that 'additional tinkering merely serves to double count some factors.'" *Dixon*, 434 F. Supp. 2d at 86 (quoting *System Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 209 (D. Mass. 2001)).  Other courts have continued to distinguish core work from non-core work and compensate the latter at two-thirds the rate of the former.  *See McGahey v. Harvard Univ. Flexible Benefits Plan*, 685 F. Supp. 2d 181, 185 (D. Mass. 2010) (distinguishing core and non-core work); *Bogan v. City of Bos.*, 432 F. Supp. 2d 222, 231 (D. Mass. 2006) (same).

Recently, the First Circuit has declined to definitively resolve the split, and instead has allowed district courts the flexibility to determine whether the distinction is appropriate in a

particular case.  In declining to find that a district judge abused his discretion by failing to apply

the core versus non-core distinction, the First Circuit stated

> At times, we have indicated our approval of fee awards that set two separate
> hourly rates for a particular attorney—one for "core" tasks like legal research,
> writing of legal documents, court appearances, negotiations with opposing
> counsel, monitoring, and implementation of court orders and a lower one for
> "non-core" tasks, which are less demanding, such as letter writing and telephone
> conversations.  The plaintiff's fee application in this case assigned a single rate to
> each attorney, and the appellants opposed that application on the ground that
> some of the time billed was for non-core work.  Those non-core activities, the
> appellants said, should be billed at two-thirds the rate applicable to core activities.
>
> The district court demurred and used a single rate for each of the plaintiff's
> lawyers (although these rates were less munificent than those that the plaintiff had
> suggested).  The appellants label this refusal an abuse of discretion.  Both the
> latitude ceded to district courts in making fee awards and the flexibility inherent
> in the lodestar approach counsel against the appellants' contention.
>
> As to the former, we frequently have acknowledged the special coign of vantage
> of the trial judge, whose intimate knowledge of the nuances of the underlying case
> uniquely positions him to construct a condign award.  Deferring to the reasonable
> judgment of the trial court in this area recognizes that the determination of the
> extent of a reasonable fee necessarily involves a series of judgment calls.  In the
> same spirit, we traditionally have refrained from prescribing hard and fast rules
> for fee awards in order to ensure that district courts are not left to drown in a
> rising tide of fee-generated minutiae.
>
> Flexibility is a hallmark of the lodestar approach.  In attempting to guide this
> flexibility, we have stated that clerical or secretarial tasks ought not to be billed at
> lawyers' rates, even if a lawyer performs them.  By the same token, we have
> indicated that certain components of fee awards (such as work performed in
> preparing and litigating fee petitions) may be calculated at discounted rates due to
> the comparative simplicity of the task.  But these are not hard-and-fast rules.
> Rather, they are expressions of the more general principle that calculating a
> reasonable fee is, for the most part, an assessment of the difficulty of the work
> involved and the time reasonably expended.  Such expressions were never meant
> to manifest an insistence that a district court adopt certain mechanistic procedures
> in calculating the lodestar.
>
> The bottom line is that there are a variety of ways in which a trial court can
> fashion the lodestar.  Distinguishing between core and non-core tasks is one of
> those ways.  But we have never imposed a rigid requirement that a district court
> employ a core/non-core analysis when adjudicating a fee petition—and we
> decline to impose such a requirement today.  While the core/non-core distinction

> may be a useful tool for fashioning a reasonable fee in some cases, the choice of whether to employ that distinction is within the sound discretion of the district court. As long as the court uses permissible techniques and explains what it has done, a reviewing court's primary focus is on the reasonableness of the award.
>
> Here, the court elected to employ an across-the-board rate cut, rather than using two-tiered rates to determine the lodestar amount. In the circumstances of this case, that methodologic choice was not an abuse of discretion.

*Matalon v. Hynnes*, 806 F.3d 627, 638-39 (1st Cir. 2015) (citations and internal quotation marks omitted); *see also Central Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs v. Ray Haluch Gravel Co.*, 745 F.3d 1, 5-8 (1st Cir. 2014) (upholding fee award which did not distinguish between core and non-core functions); *United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40-42 (1st Cir. 2008) (same); *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1189-91 (1st Cir. 1996) (same).

Here, upon review of the time records, it appears that Showtime's attorneys spent very few billable hours, if any, in unproductive meetings or on non-substantive conference calls. Moreover, this case did not require many hours of document review, a task that law firms have increasingly outsourced to contract attorneys or computer programs. Instead, this case required Showtime's attorneys to research First Amendment case law, construct legal arguments, and persuasively convey those arguments in summary judgment motions and appellate briefs.

However, Showtime's attorneys spent 71.5 hours preparing and litigating their fee petition, an "exercise [that] often amounts to little more than 'documenting what a lawyer did and why he or she did it.'" *Brewster*, 3 F.3d at 494 (quoting *Gabriele*, 712 F.2d at 1507). The Court is aware that Showtime's attorneys spent some of those hours researching the law regarding fee petitions and drafting their supporting memoranda, tasks that they argue are core legal work. However, the law regarding fee petitions is well-established, and attorneys should

18

not receive a windfall for injecting legal analysis into an exercise that should involve little more than collecting and submitting billing records.

Accordingly, the Court will apply a non-core rate of two-thirds the rates determined above to the 34 hours that Attorney Lesser spent on the fee petition (15% reduction of the 40 fee petition hours submitted) and the 25.2 hours that Attorney Aleo spent on the fee petition (20% reduction of the 31.5 fee petition hours submitted).  The rest of the hours submitted by Showtime's attorneys appear to warrant a rate for core legal work.

**D.**     **Costs**

After review of Showtime's costs, and no objection having been raised by defendants, the Court will award $1,339.27 in costs.

IV.     **Conclusion**

| Awarded Fees | | | |
|---|---|---|---|
| Lawyer | Hours | Hourly Rate ($) | Total Fee Billed ($) |
| *Core Hours* | | | |
| Thomas Lesser | 172.34 | 350 | 60,318.13 |
| Michael Aleo | 242.28 | 225 | 54,513.00 |
| Lisa Kent | 52.77 | 225 | 11,873.25 |
| **Total** | **467.39** | **- $** | **126,704.38** |
| *Hours on Fee Petition (Non-Core)* | | | |
| Thomas Lesser | 34.00 | 233 | 7,933.33 |
| Michael Aleo | 25.20 | 150 | 3,780.00 |
| Lisa Kent | - | - | - |
| **Total** | **59.20** | **- $** | **11,713.33** |
| **Total Hours and Fees** | **526.59** | **$** | **138,417.71** |
| Costs | | | 1,339.27 |
| **Total Award** | | **$** | **139,756.98** |

For the foregoing reasons and per the table above, Showtime's motion for attorneys' fees and costs is GRANTED in the amount of $138,417.71 in fees and $1,339.27 in costs, and otherwise is DENIED.


**So Ordered.**


                                          /s/  F. Dennis Saylor
                                          F. Dennis Saylor IV
Dated:  April 16, 2016                    United States District Judge